# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 98-1232

_____

| | | |
|---|---|---|
| Rebecca A. Berg, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Norand Corporation, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 15, 1998
Filed: March 5, 1999

_____

Before BOWMAN, Chief Judge, HANSEN, Circuit Judge, and VIETOR,[1] District Judge.

_____

HANSEN, Circuit Judge.

Rebecca Berg brought this employment discrimination claim against Norand Corporation (Norand), alleging Norand discriminated against her based on her

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa, sitting by designation.

disability (Berg is a non-insulin dependant diabetic) and her sex. The district court[2] granted summary judgment in favor of Norand on its second motion for summary judgment and Berg appeals.[3] We affirm.

## I.

Because the district court granted summary judgment in favor of Norand, we state the facts in the light most favorable to Berg, the nonmoving party. See Burroughs v. City of Springfield, 163 F.3d 505, 506 (8th Cir. 1998). Norand hired Berg to manage its tax department in March 1990 and added the management of Norand's payroll and risk management departments to her responsibilities in September 1991. Berg routinely worked 70 to 80 hours per week to meet the demands of her job. By early 1993, Berg's health began to deteriorate and she was unable to continue the 70- to 80-hour pace. Berg took a medical leave of absence in February 1993. In March 1993, after returning to work, Berg received her first ever poor performance reviews for failing to keep up with her workload. Norand placed her on probation and set specific goals for improving her performance. Norand also relieved Berg of her payroll department responsibilities to help her timely complete her priority projects. Berg still failed to meet Norand's expectations. Berg was diagnosed with diabetes in May 1993, and she immediately informed her supervisors.

On August 2, 1993, Berg tendered her written resignation to Bob Hurd, her immediate supervisor, because of the stress from the long hours and her work

---

[2]The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

[3]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa, previously dismissed one of Berg's claims for failure to state a claim but denied Norand's Fed. R. Civ. P. 12(b)(6) and alternative summary judgment motions on her other claims.

environment. In her resignation, Berg agreed to stay until her year-end projects were completed, tentatively through October. Hurd verbally accepted her resignation. Berg attempted to withdraw her resignation on August 19, asking instead for an accommodation of reduced work hours to 40 to 50 hours per week. This was Berg's first request for an accommodation. During the August 19 meeting with Mike Wakefield, the director of human resources, Berg discussed her suicidal tendencies. Berg met with Hurd to discuss the attempted withdrawal of her resignation on the following Monday, August 23. The record is unclear as to the exact date, but Berg had discussed her suicidal tendencies with Hurd a few days before the August 23 meeting. Shortly after his meeting with Berg, Hurd discussed her situation with Wakefield. They placed Berg on immediate medical leave and insisted that she see a psychiatrist that afternoon, though she had an appointment with her own doctor the next day. Because the psychiatrist Berg was to see was unavailable, Berg was admitted to the hospital overnight, allegedly against her will. She saw her own doctor and was released the following morning.

Berg returned to work a week later. No one discussed Berg's pending resignation or her attempt to withdraw her resignation following her return. Berg was terminated on December 7, 1993, purportedly because of her resignation and continued poor performance.

Berg filed disability discrimination claims against Norand under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-12213 (1994), and the Iowa Civil Rights Act of 1965 (ICRA), Iowa Code §§ 216.1-.20 (1993). Berg alleged sex discrimination based on unequal pay under the ICRA; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (1994); the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201-19 (1994); and the Equal Pay Act of 1963, 29 U.S.C. § 206 (1994). Finally, Berg brought supplemental state law claims of negligent misrepresentation, breach of implied contract, and false imprisonment. The FLSA claim was dismissed on an earlier Fed. R. Civ. P. 12(b)(6) motion. The district court

granted summary judgment in favor of Norand on Berg's remaining claims. Berg does not appeal the dismissal of the sex discrimination claims brought under the ICRA, Title VII,[4] and the FLSA.

## II.

We review de novo the district court's grant of summary judgment in favor of Norand, using the same standards used by the district court. See Breeding v. Arthur J. Gallagher & Co., 164 F.3d 1151, 1156 (8th Cir. 1999). "Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Id. (citations omitted); Fed. R. Civ. P. 56(c). While we have said that summary judgment is generally inappropriate in discrimination cases because they are often based on inferences that the fact finder may or may not draw, see Breeding, 164 F.3d at 1156, there is no "discrimination case exception" to the application of Fed. R. Civ. P. 56, and it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial.

---

[4]Berg argues that Norand did not move for summary judgment on the Title VII claim and thus, the district court did not properly dismiss it. Norand included the Title VII claim in its motion for summary judgment but specifically argued only under the ICRA and Equal Pay Act in its brief. The standards in an unequal pay for equal work claim are the same under Title VII and the Equal Pay Act. See Kindred v. Northome/Indus. Sch. Dist., 154 F.3d 801, 803 (8th Cir. 1998), cert. denied, 1999 WL 16149. Berg had notice of, and in fact argued, the elements of the Title VII claim when she argued the Equal Pay Act claim. Cf. Walker v. Missouri Dep't of Corrections, 138 F.3d 740, 742 (8th Cir. 1998) (reversing grant of summary judgment where district court based its decision on an element of an ADA claim that the opposing party was not aware was at issue). Thus, the disposition of the Title VII claim was properly before the district court on summary judgment.

## A.     Disability Discrimination

To state a claim under either the ADA or the ICRA,[5] Berg "must demonstrate that [she] has a disability as defined in the ADA; that [she] is qualified to perform the essential functions of the job at issue, either with or without reasonable accommodation; and that 'because of' [her] disability, [she] suffered an adverse employment action."   Burroughs, 163 F.3d at 507 (citations omitted).  The ADA defines disability as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;   (B) a record of such an impairment;  or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Iowa uses similar criteria under the ICRA to define disability.  See Bearshield v. John Morrell & Co., 570 N.W.2d 915, 918 (Iowa 1997) (citing Iowa Admin. Code § 161-8.26(1) (1993)).   The Equal Employment Opportunity Commission (EEOC) regulations define "major life activities" to include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and  working."  29 C.F.R. § 1630.2(i) (1998).  To establish that she is substantially limited in the life activity of working, Berg must show that she is limited from performing a class of jobs or a broad range of jobs within various classes.  "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  § 1630.2(j)(3)(i).

Berg claims that her diabetes is disabling because it limits her major life activity of working by: limiting her to a 40- to 50-hour work week; causing her continuous joint pain; causing her difficulty with her speech; and making it difficult to focus on her job due to the pain.  However, she admits that she could effectively

---

[5]Iowa courts look to the ADA, its regulatory interpretations, and its caselaw in construing a disability claim under the ICRA.  See Fuller v. Iowa Dept. of Human Servs., 576 N.W.2d 324, 329 (Iowa 1998); Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997).  Thus, our analysis, though referring only to the ADA, applies also to Berg's ICRA claim.

perform her duties at Norand if her work load was reduced to 40 to 50 hours per week.  (See J.A. at 85.)  Berg's only request for an accommodation is for reduced hours.  (See id. at 286-87.)

"Not every physical or mental impairment 'counts' for ADA purposes, because most disabilities from which people suffer (bad vision, impaired hearing, arthritic joints, diabetes) do not have a substantial enough effect on their major life activities." Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 675 (7th Cir. 1998).  Such is the case with Ms. Berg.  In her resistance to summary judgment, Berg only claimed that her diabetes limited her major life activity of working.  (See J.A. at 177, 180.) Subsequent to her termination from Norand, Berg started her own tax and accounting practice and became the chief financial officer of a construction company.  She concedes that she has never been unemployed.  (See J.A. at 194.)  Berg has failed to show any class of jobs or broad range of jobs from different classes from which she is excluded because of her diabetes.  See 29 C.F.R. § 1630.2(j)(3)(ii) (listing factors for determining whether an individual is limited in the life activity of working). Thus, Berg is not substantially limited in the major life activity of working.  See Gutridge v. Clure, 153 F.3d 898, 901 (8th Cir. 1998) (finding no substantial limitation where the plaintiff found a similar job); Miller v. City of Springfield, 146 F.3d 612, 614-15 (8th Cir. 1998) (disqualification from one's job of choice is not substantially limiting).  We find it hard to say that being limited to a 40- to 50-hour work week substantially limits one's ability to work.  See, e.g., Muthler v. Ann Arbor Mach., Inc., 18 F. Supp. 2d 722, 729 (E.D. Mich. 1998) (heart condition that restricted management employee to 40-hour week did not substantially limit major life activity of working); Kolpas v. G.D. Searle & Co., 959 F. Supp. 525, 529 (N.D. Ill. 1997) (same); Brennan v. National Tele. Directory Corp., 850 F. Supp. 331, 343 (E.D. Pa. 1994) ("The inability to work overtime hardly makes plaintiff handicapped.").

Berg asserts for the first time on appeal that Norand perceived her as disabled and thus she fits within the ADA's definition of disabled.[6]  See 42 U.S.C. § 12102(2)(C).  We will not entertain a new argument on appeal from the grant of summary judgment.  See O.R.S. Distilling Co. v. Brown-Forman Corp., 972 F.2d 924, 926 (8th Cir. 1992).  Thus, we hold that the district court properly granted summary judgment in favor of Norand on Berg's disability claims under the ADA and the ICRA.

**B.    Wage Discrimination**

To establish a prima facie case under the Equal Pay Act, Berg must meet her burden of showing that Norand paid male employees higher wages than it paid her for jobs "requir[ing] equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1) (1994).  See also McLaughlin v. Esselte Pendaflex Corp., 50 F.3d 507, 513 (8th Cir. 1995).  In making our assessment, we look at all of the facts of the particular case.  "Skill includes such considerations as experience, training, education, and ability.  Effort refers to the physical or mental exertion necessary to the performance of a job.  Responsibility concerns the degree of accountability required in performing a job." McLaughlin, 50 F.3d at 513 (citations omitted).

Berg provides only conclusory affidavit testimony that the male managers to whom she compares herself have jobs "equal" to hers. (See J.A. at 306-07).  She does not articulate which particular male managers have jobs similar to hers but points out

---

[6]Berg argues that she raised this issue in her resistance to summary judgment.  However, her resistance merely recited the familiar alternatives for showing a disability under the ADA, one of which is being regarded as disabled. Berg did not argue that Norand in fact regarded her as disabled.  The recitation of the statutory alternatives is insufficient to raise the "regarded as having such an impairment" issue.

that the average annual salary of Norand's thirty-three male managers is $6,000 to $8,000 higher than the average salary of its seven female managers. (See id. at 311-13.) The male managers included in this calculation encompass many disciplines, including, inter alia, finance managers, production managers, engineering managers, and manufacturing managers. Berg does not indicate how the males to whom she compares herself are similar in experience, education, or training. In short, she does not explain how they are similar at all other than that they are "managers." Berg has failed to establish a prima facie case under the Equal Pay Act. See 29 C.F.R. § 1620.13(e) (1998) ("Application of the equal pay standard is not dependent on job classifications or titles but depends rather on actual job requirements and performance."). See also Equal Employment Opportunity Comm'n v. Universal Underwriters Ins. Co., 653 F.2d 1243, 1245 (8th Cir. 1981) ("[A] court must compare the jobs in question in light of the full factual situation . . . .").

Berg asserts for the first time in her reply brief that her replacement, Eric Pugh, received a higher salary than she had received. Not only is this the inappropriate time and place to raise this new argument, but there is evidence in the record that Norand revamped Berg's position and that Pugh held a different job. (See J.A. at 121.) We refuse to entertain this new argument and hold that the district court properly granted summary judgment in favor of Norand on the wage discrimination claim.

## C.    State Law Supplemental Claims

In passing on Berg's state law claims, we apply Iowa law. If Iowa law is unsettled on a particular issue, it is our job to apply the rule that we think the Supreme Court of Iowa would follow. See Novak v. Navistar Int'l Transp. Corp., 46 F.3d 844, 847 (8th Cir. 1995).

## 1. Breach of Implied Contract

The employment-at-will doctrine, allowing an employer to terminate an employee for any lawful reason, is alive and well in Iowa. See Lockhart v. Cedar Rapids Community Sch. Dist., 577 N.W.2d 845, 846 (Iowa 1998). Berg signed an employment agreement with Norand that specifically provided that her employment was at-will and that any employee handbooks were strictly guidelines and could not constitute a contract. (See J.A. at 122-23.) Iowa courts look with favor upon such express disclaimers. See, e.g., Jones v. Lake Park Care Ctr., Inc., 569 N.W.2d 369, 376 (Iowa 1997) (noting that an appropriately drafted disclaimer would ensure that an employee handbook would not create an implied contract). The handbook upon which Berg relies to find an implied contract provides reasons for termination but does not state that they are exclusive. Iowa law disfavors implied contracts and will not imply a contract where to do so conflicts with a written agreement between the parties. See French v. Foods, Inc., 495 N.W.2d 768, 771 (Iowa 1993); Budget Mktg., Inc. v. Centronics Corp., 927 F.2d 421, 426 (8th Cir. 1991) ("'[T]here can be no implied contract on a point fully covered by an express contract and in direct conflict therewith.' Snater v. Walters, 250 Iowa 1189, 98 N.W.2d 302, 307 (1959)."). Thus, contrary to Berg's assertions, a written contract of at-will employment trumps an alleged but nonexistent implied contract to the contrary.

## 2. Negligent Misrepresentation

The Supreme Court of Iowa has foreclosed Berg's negligent misrepresentation claim based on an implied contract. See Alderson v. Rockwell Int'l Corp., 561 N.W.2d 34, 36 (Iowa 1997) (reaffirming its prior holding "that an action for negligent misrepresentation . . . will not lie for alleged wrongful termination of employment."). Noting the general rule that negligent misrepresentation "applies only to a defendant who is in the business of supplying information to others," id., the court found that because the plaintiffs were at-will employees, any representations concerning the

9

length of employment were not actionable in tort. Similarly, our holding that there was no implied contract prevents Berg from bringing this claim. "To rule otherwise would permit [Berg] . . . to potentially recover in tort on the same factual grounds on which the law would deny [her] recovery in contract." Id. (citing Fry v. Mount, 554 N.W.2d 263, 266 (Iowa 1996)).

Likewise, our holding that Berg does not have a disability within the meaning of the ADA or the ICRA disposes of Berg's claim of negligent misrepresentation based on Norand's policy of not terminating an employee based on her disability. Iowa law recognizes a modification to the employment-at-will doctrine, which modification prevents an at-will employee from being terminated for a reason that is contrary to public policy. See Lockhart, 577 N.W.2d at 846; Springer v. Weeks & Leo Co., 429 N.W.2d 558, 559-60 (Iowa 1988). Because Berg was not disabled within the meaning of the ADA or the ICRA, Berg's termination did not contravene public policy or Norand's own internal policy. The district court properly dismissed Berg's negligent misrepresentation claim.

### 3. False Imprisonment

False imprisonment requires the unlawful detention or restraint of a person against her will. See Children v. Burton, 331 N.W.2d 673, 678-79 (Iowa), cert. denied, 464 U.S. 848 (1983). We have been unable to find any Iowa cases factually on point. False imprisonment in Iowa is generally applied in cases of false arrest by a police or security officer or in connection with assault or kidnapping charges. See, e.g., Lenstra v. Menard, Inc., 511 N.W.2d 410, 411 (Iowa Ct. App. 1993) (security officer held plaintiff for alleged shoplifting); State v. Snider, 479 N.W.2d 622, 623-24 (Iowa Ct. App. 1991) (assault victim may have action against assailant for false imprisonment related to the assault).

10

Norand managers Bob Hurd and Mike Wakefield, concerned for Berg's safety after she discussed her suicidal tendencies, arranged for a medical evaluation and "sent" Berg to the hospital. Berg drove herself to the hospital and the hospital admitted her. The actions of the Norand employees did not restrain Berg as required for a false imprisonment claim. See Newsom v. Thalhimer Bros., Inc., 901 S.W.2d 365, 367 (Tenn. Ct. App. 1995) (finding element of restraint lacking where employee voluntarily accompanied her supervisor to his office and remained in his office because her supervisor stated he would call the police if she left). Additionally, Berg has provided no evidence that Hurd or Wakefield had anything to do with her hospital admission. Thus, Berg has failed to show that Norand restrained her, as required by Children for a false imprisonment claim. See Fish v. Regents of the Univ. of Cal., 54 Cal. Rptr. 656, 659 (Cal. Ct. App. 1967) (holding that an employer is not liable for false imprisonment where its doctor/employee, who expressed concerns about the plaintiff to the admitting doctor, did not act in bad faith or actively participate in the plaintiff's hospital admission for evaluation). We do not believe that the Supreme Court of Iowa would extend the false imprisonment cause of action to cover this conduct. The district court correctly dismissed Berg's claim of false imprisonment.

## III.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

11