# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2018

_____

Wanda K. Taylor,       *
                      *

      Appellant,       *
                      *    Appeal from the United States

      v.                  *    District Court for the
                      *    Eastern District of Arkansas.

Nimock's Oil Co., an Arkansas     *
corporation,                 *
                      *

      Appellee.        *

_____

Submitted: February 17, 2000

Filed: June 2, 2000

_____

Before WOLLMAN, Chief Judge, BOWMAN, and MORRIS SHEPPARD ARNOLD,
     Circuit Judges.

_____

WOLLMAN, Chief Judge.

      Wanda K. Taylor appeals from the district court's[1] grant of summary judgment
on her claim of employment discrimination under the Americans with Disabilities Act

_____

     [1]The Honorable Elsijane Trimble Roy, United States District Judge for the
Eastern District of Arkansas.

(ADA), 42 U.S.C. §§ 12101-12213, in favor of her former employer, Nimock's Oil Co. (Nimock). We affirm.

## I.

We recite the facts in the light most favorable to Taylor. From 1989 to 1996, Taylor worked as cashier in one of Nimock's convenience stores. By late 1995, she also performed "head cashier work," which essentially involved running the store, in particular when the manager was absent. In November of 1995, Taylor suffered a heart attack and was hospitalized. Nimock sent her a "get well" card in late 1995, signed by management and employees. On December 18, 1995, Taylor's doctor gave her a release to return to work on January 3, 1996, with certain restrictions.

On January 2 or 3, 1996, Taylor stopped in at the store to discuss the work schedule with her supervisor, Brad Hudspeth. Although that store needed someone who would be able run the store (i.e. act as head cashier), there were no regular cashier positions available. Taylor, however, would not do head cashier work, explaining that her doctor had said that she could "run the register only." Hudspeth told her that there were no positions available at that time that met that description. Hudspeth also later contacted Taylor's doctor's office about the release note and was of the opinion that what the nurse described as Taylor's restrictions were not what Taylor had said they were, although he did not immediately tell Taylor about this conversation. Hudspeth suggested to Taylor that she return when she had a full release to return to work, and he wrote for Taylor a note that she used to obtain unemployment benefits. Taylor continued treatment for her heart disease, and she will likely always require medication for it.

In March of 1996, Taylor received a full release from her doctor to return to work without restriction. At this point, no cashier or head cashier positions were available. Hudspeth informed Taylor that he would offer her a cashier position when

one became available but that she would have to accept a pay cut in her hourly wage. From March to August of 1996, Taylor was not offered a position at the convenience store despite Nimock's hiring of several new cashiers during those months. In August of 1996, Taylor contacted Hudspeth to determine her employment status because she had heard that she had been fired. Hudspeth confirmed that she had been terminated. Later that month, Taylor began work as a front end manager at Hays Food Center.

In October of 1996, Taylor filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC). She received a right-to-sue letter in May of 1997 and subsequently brought suit in federal district court, alleging that Nimock had violated the ADA by terminating her employment and failing to accommodate her.

The district court granted summary judgment in favor of Nimock, finding that Taylor had not established that she suffered from a disability within the meaning of the ADA and thus could not establish a prima facie case. The court also found no evidence to support Taylor's contention that relevant employment decisions were motivated by improper animus.

## II.

We review the district court's grant of summary judgment de novo. See Henerey v. City of St. Charles, 200 F.3d 1128, 1131 (8th Cir. 1999). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See id.; Fed. R. Civ. P. 56(c).

Taylor's discrimination claims are analyzed under the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). See Floyd v. Missouri Dept. of Soc. Servs., 188 F.3d 932, 936 (8th Cir. 1999). Initially,

Taylor must establish a prima facie case of discrimination. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action, and if it succeeds in meeting its burden of production, then the plaintiff must show that the reason put forth is pretextual. At all times the burden of persuasion remains with the plaintiff. See id.

To establish a prima facie case of discrimination, Taylor must show (1) that she had a disability within the meaning of the ADA, (2) that she was qualified to perform the essential functions of her job, with or without reasonable accommodation, and (3) that she suffered an adverse employment action because of her disability. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1135 (8th Cir. 1999) (en banc).

Under the ADA, disability is defined as: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). According to the regulations that guide the interpretation of the ADA, an impairment is "substantially limiting" if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform such an activity compared to the general population. 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and working, 29 C.F.R. § 1630.2(i), as well as sitting, standing, lifting, and reaching. See Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 948 (8th Cir. 1999).

Several factors are considered in determining whether a person is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact. 29 C.F.R. § 1630.2(j)(2)(i)-(iii). Whether an individual is substantially limited in a major life activity must take into account mitigating measures such as medication and assisting

devices.  See Sutton v. United Air Lines, Inc., 527 U.S. 471, ___, 119 S. Ct. 2139, 2146 (1999).  Heart disease is an impairment that, if it substantially limits a major life activity, may constitute a disability.  See Weber v. Strippit, Inc., 186 F.3d 907, 913 (8th Cir. 1999), cert. denied, 120 S. Ct. 794 (2000).

Taylor argues that she is substantially limited in the life activities of breathing, walking, doing yard work, cleaning house, and having sex.  Taylor also admitted, however, that she can walk and has walked long distances, including approximately a mile to work, and can perform the activities listed above, although she may have to perform them in moderation.  In Weber, we noted that the employee could not walk long distances or climb stairs without becoming fatigued and was subject to certain dietary restrictions, but held that "these moderate limitations on major life activities do not suffice to constitute a 'disability' under the ADA."  See id. at 914.  We conclude that Taylor's limitations in the above-listed areas are likewise moderate and thus do not qualify as substantial limitations on a major life activity other than work.

Taylor also contends that she is substantially limited in the major life activity of working.  To be so limited, she must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  29 C.F.R. § 1630.2(j)(3)(i).  Inability to perform one particular job does not constitute a substantial limitation on working.  See id.; Weber, 186 F.3d at 913.

We note, first, that Taylor does not dispute that as of late March of 1996, she could work without restriction, at least so long as she continued to take her medication.  Thus, after that time she cannot be considered to have a disability within the meaning of the ADA as it pertains to the life activity of working.  Indeed, Taylor has obtained and retained full-time employment.

Second, during the time period of January to March of 1996, Taylor was limited in the life activity of working only to the extent of her restrictions, which were that she could work only 40 hours per week and lift no more than 10 pounds. Although overtime hours may be the normal practice for many jobs, we conclude that Taylor's limitations on working were not substantially limiting within the meaning of the ADA. See Berg v. Norand Corp., 169 F.3d 1140, 1145 (8th Cir. 1999) ("We find it hard to say that being limited to a 40- to 50-hour work week substantially limits one's ability to work."). Taylor's restrictions were applicable to her only while she was recovering and lasted only a few months, relevant factors under 29 C.F.R. § 1630.2(j)(2) that cut against a finding of substantial limitation. Taylor has not shown that working 40 hours a week and lifting no more than 10 pounds limits her employment opportunities in her geographical area. Accordingly, we conclude that Taylor has presented no evidence to create a genuine issue of material fact about whether she could perform a class of jobs with her restrictions. See Berg, 169 F.3d at 1145; Aucutt v. Six Flags Over Mid-America, Inc., 85 F.3d 1311, 1319 (8th Cir. 1996) (lifting restriction of 25 pounds not sufficient to demonstrate plaintiff was unable to perform a class of jobs); Helfter v. United Parcel Service, Inc., 115 F.3d 613, 617-18 (8th Cir. 1997) (inability to perform sustained repetitive action with either hand and heavy lifting not enough to show issue of fact about substantial limitation in life activity of work).

Taylor has also failed to show that Nimock regarded her as having a disability within the meaning of the ADA or that there was a record of her disability on the basis of which Nimock acted. Taylor points to Nimock's knowledge of her heart attack, the "get well" card sent by Nimock, and the note that Hudspeth wrote in January of 1996 to enable Taylor to receive unemployment benefits, in which he stated that it would be in Taylor's best interest not to return to work with her current restrictions.

The ADA regulation pertaining to whether Nimock regarded Taylor as disabled requires that Taylor have an impairment that "does not substantially limit major life activities but is treated by a covered entity as constituting such limitation." 29 C.F.R.

§ 1630.2(l)(1); see Cody v. CIGNA Healthcare of St. Louis, Inc., 139 F.3d 595, 598-99 (8th Cir. 1998). The evidence that Taylor cites in support of this proposition does not demonstrate that Nimock considered Taylor to be disabled and unable to work. In Cody, we found that an employee who was offered paid medical leave and required to see a psychologist before returning to work was not regarded by her employer as having a substantially limiting impairment. See Cody, 139 F.3d at 599. We conclude that knowing that an employee may be having medical difficulties and expressing concern, whether through an offer of medical leave or, as here, sending a "get well" card, does not amount to treating an employee as if she has a permanent disability that substantially limits her life activities.

Having a record of a qualifying impairment means that an employee "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). In order to have a record of a disability, an employee's "documentation must show" that she has a history of or has been subject to misclassification as disabled. See Weber, 186 F.3d at 915. We do not believe that Nimock's mere knowledge of Taylor's heart attack, coupled with the sending of a get-well card and a note about her job duties, constitutes sufficient documentation that Taylor had a history of disability or that Nimock misclassified her as disabled within the meaning of the ADA. To the contrary, this evidence supports the proposition that Nimock acknowledged that Taylor was suffering medical problems but expected that she would return to work when she had sufficiently healed. See, e.g., Gutridge v. Clure, 153 F.3d 898, 901-02 (8th Cir. 1998) (record of impairment not established during period of recovery and treatment following a work injury because this type of impairment is not a permanent disability), cert. denied, 526 U.S. 1113 (1999).

Taylor has failed to establish a genuine issue of material fact on whether she has a disability within the meaning of the ADA. Thus, she has failed to make a threshold case of discrimination, and we need not address other parts of the test for a prima facie

case. Similarly, we need not address Nimock's contention that Taylor's claim should fail because it was untimely filed.

The judgment is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.