# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 00-1893

———————

Clyde M. Kellogg,      *
     *
        Plaintiff-Appellant,      *
     *    Appeal from the United States
       v.      *    District Court for the
     *    District of Nebraska.
Union Pacific Railroad Company,      *
A Corporation,      *        (PUBLISHED)
     *
        Defendant-Appellee.      *

———————

Submitted: October 23, 2000

Filed: December 4, 2000

———————

Before WOLLMAN, Chief Judge, LAY and BEAM, Circuit Judges.

———————

PER CURIAM.

Clyde M. Kellogg (Kellogg) appeals the district court's[1] order granting summary judgment to Union Pacific Railroad (Union Pacific) on his claim of discrimination under the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12117 (2000). Kellogg also maintains that summary judgment was improper because an earlier

_____

[1]Honorable Joseph F. Bataillon, United States District Judge for the District of Nebraska.

agreement with Union Pacific guaranteed his continued employment with the company. We affirm the judgment of the district court.

## I.

Kellogg was a third-generation employee of Union Pacific whose career with the company spanned twenty-six years. Beginning as a switchman/brakeman in 1973, Kellogg ascended through the ranks at Union Pacific to conductor in 1978, and then to management in 1992.

In 1996, Kellogg was promoted to Senior Manager of Intermodal Stack Train Operations at Union Pacific's Harriman Dispatch Center in Omaha, Nebraska. In that position, Kellogg oversaw all freight traffic for Union Pacific's biggest client, American Presidential Lines (APL). His job required him to work sixty to eighty hours per week and to be on call twenty-four hours per day. When he was not at the Harriman Center, Kellogg took calls and monitored business by computer at home, and attended to APL on many of his vacation days. He was commended by APL for his unusual support and dedication.

On September 2, 1997, Kellogg was at work when he experienced symptoms of a heart attack and was taken by ambulance to the hospital. It was later determined that he had suffered a severe panic attack. Doctors diagnosed him with major depression and anxiety, and prescribed counseling, medication, and a leave of absence from work.

Kellogg returned to the Harriman Center on September 29, 1997, temporarily restricted by his doctors to a forty-hour, daylight only work week. About a month later, Kellogg's doctors ordered him off work again so that his medications could be adjusted. When Kellogg attempted to return to work on January 6, 1998 with the same

conditions as before,[2] his supervisor, Byron Schroeder, said that Union Pacific no longer could accommodate Kellogg's working restrictions.

Four days later, Kellogg wrote a letter to his director at Union Pacific expressing his willingness to return to work and emphasizing that his work restrictions were not absolute. Union Pacific did not respond. Kellogg continued to write to Union Pacific indicating his desire to return to work, to no avail. During the same period, Kellogg unsuccessfully applied, but was not hired, for eight other positions within the company. In March of 1998, Kellogg was placed on Union Pacific's Long-Term Disability Plan. On May 5, 1998, the company sent a letter to Kellogg, informing him that he was entitled to short-term disability benefits. When Kellogg's long-term disability benefits expired on March 4, 1999, Union Pacific terminated him.

Kellogg filed charges with the Nebraska Equal Opportunity Commission (NEOC) claiming Union Pacific's actions violated the ADA. The NEOC, in turn, issued Kellogg a right-to-sue letter.

Kellogg brought suit against Union Pacific in the United States District Court for the District of Nebraska, claiming that Union Pacific violated the ADA because, due to his anxiety and depression, the company refused to allow him to return to his job as Senior Manager of Intermodal Stack Train Operations, and failed to hire him to work in any other position for which he applied. Kellogg also alleged that Union Pacific's actions violated a Release and Settlement agreement the parties signed subsequent to a separate injury Kellogg suffered on the job in 1991. The district court granted Union Pacific's motion for summary judgment on grounds that Kellogg had not shown he was disabled under the ADA. The court also found that the Release and Settlement

---

[2]When he returned from medical leave Kellogg's doctor recommended that Kellogg permanently restrict himself to a 40-hour, daylight only work week.

agreement between Kellogg and Union Pacific did not entitle Kellogg to continued employment with Union Pacific. This appeal followed.

## II.

This court reviews a district court's grant of summary judgment de novo. See Treanor v. MCI Telecomm. Corp., 200 F.3d 570, 573 (8th Cir. 2000). In doing so, we apply the same standard as the district court. See id. Thus, we will affirm a grant of summary judgment when the evidence, viewed in the light most favorable to the nonmoving party, shows that there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

## III.

To establish a claim under the ADA, Kellogg must make a prima facie showing that (1) he is disabled within the meaning of the ADA; (2) he is qualified to perform the essential functions of his job, with or without reasonable accommodation; and (3) he suffered adverse employment action because of his disability. See Gutridge v. Clure, 153 F.3d 898, 900 (8th Cir. 1998). If Kellogg fails to establish any element of his prima facie case, summary judgment is proper. See Kiel v. Select Artificials, Inc., 169 F.3d 1131, 1134-35 (8th Cir.1999) (en banc). If Kellogg meets his burden, a rebuttable presumption of discrimination emerges and Union Pacific must articulate a legitimate, nondiscriminatory reason for the adverse employment action taken against him. See id. at 1135. If Union Pacific rebuts the presumption, Kellogg must demonstrate that the company's nondiscriminatory reason was pretextual. See id.

As a first step, Kellogg must show that he is disabled within the meaning of the ADA by establishing that: (A) he is physically or mentally impaired such that he is substantially limited in one or more major life activity; (B) he has a record of such an

impairment; or (C) he is regarded as having such an impairment. <u>See</u> 42 U.S.C. § 12102(2).

We assume, without deciding, working is a major life activity under the ADA. <u>See</u> <u>Sutton v. United Air Lines, Inc.</u>, 527 U.S. 471, 492 (1999) (assuming, without deciding, that working is a major life activity); 29 C.F.R. § 1630.2(i) (1999). According to the Equal Employment Opportunity Commission (EEOC), an individual is substantially limited in the major life activity of working if he or she is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (1999). <u>See</u> <u>also</u> <u>Sutton</u>, 527 U.S. at 492 (assuming but not deciding that this regulation is reasonable). It is important to note that "[t]he inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i).

In evaluating whether an individual is substantially limited in the major life activity of working, the EEOC regulations direct that we consider the nature, severity, duration and impact of the disability itself. <u>See</u> 29 C.F.R. § 1630.2(j)(2)(i)-(iii) (1999). Other considerations include: (A) the geographical area to which the individual has reasonable access; (B) the job from which the individual has been disqualified because of the impairment and the class of similar jobs from which the individual also is disqualified because of the impairment; and/or (C) the job from which the individual has been disqualified and the broad range of jobs in various classes from which the individual also is disqualified because of the impairment. <u>See</u> 29 C.F.R. § 1630.2(j)(3)(ii) (1999). Given the numerous factors a court must weigh, the determination of whether an individual is substantially limited in the major life activity of working is made on a case by case basis. <u>See</u> <u>Fjellestad v. Pizza Hut of Am., Inc.</u>, 188 F.3d 944, 949 (8th Cir. 1999). At bottom, a court must ask "whether the particular impairment constitutes for the particular person a significant barrier to employment." <u>Id</u>. (citation omitted).

To show that his mental condition substantially limits him in the major life activity of working, Kellogg submits the affidavit of James T. Rogers (Rogers), a certified professional counselor, which concludes that Kellogg's limitation to a forty-hour work week "would have a significant and seriously deleterious effect on his potential for employment in a broad range of jobs across many categories of work particularly managerial, professional, technical and skilled craft work positions and not merely a narrow or single class of jobs." Rogers supports his affidavit with a vocational assessment based upon a medical diagnosis, doctors' work restrictions, and a personal interview with Kellogg, as well as Rogers's own curriculum vita summarizing his thirty years experience in the vocational counseling field.

Union Pacific concedes that Kellogg has a mental impairment. However, the company argues that Kellogg's mental impairment, and his subsequent limitation to a forty-hour work week, does not substantially limit him in the major life activity of working.

An employee is not substantially limited in the major life activity of working by virtue of being limited to a forty-hour work week. See Taylor v. Nimock's Oil Co., 214 F.3d 957, 960-61 (8th Cir. 2000); Berg v. Norand Corp., 169 F.3d 1140, 1145 (8th Cir. 1999). See also Tardie v. Rehab. Hosp. of Rhode Island, 168 F.3d 538, 542 (1st Cir. 1999). Although "overtime hours may be the normal practice for many jobs," an impairment that prohibits an individual from working over forty hours per week is "not substantially limiting within the meaning of the ADA." Taylor, 214 F.3d at 960-61.

The parties in the present case agree that before his 1997 panic attack, Kellogg regularly worked between sixty and eighty hours per week, including weekends and holidays. His home was equipped so that he was available to work around-the-clock. Union Pacific insists that such hours are inherent in the job of Senior Manager of Intermodal Stack Train Operations. Thus, overtime hours appear to be the normal practice for Kellogg's former job and his current work week restrictions preclude him from fulfilling the duties of that position. Despite that he cannot fulfill the hourly work

week requirements of his former senior management position, Kellogg contends that he is qualified to perform any number of other forty-hour per week jobs with Union Pacific. Kellogg's ability to work a forty-hour week juxtaposed with the law of this Circuit precludes us from finding that the nature, severity, duration and impact of Kellogg's anxiety and depression qualify him as disabled under the ADA. See 29 C.F.R. § 1630.2(j)(3)(i).

The next step in our analysis is to consider the geographical area to which Kellogg has reasonable access, the class of similar jobs from which Kellogg also is disqualified because of the impairment, and the broad range of jobs in various classes from which Kellogg also is disqualified. See 29 C.F.R. § 1630.2(j)(3)(ii). With respect to these factors, Kellogg argues that Rogers's affidavit establishes that Kellogg is impaired from competing from a broad, not just a narrow range of jobs.

The district court determined that the conclusions set forth in Rogers's affidavit failed to create a factual dispute required for Kellogg's claim to survive summary judgment. We need not pass on that determination because we find that facts contained in Rogers's affidavit and its supporting documentation, along with other evidence submitted by Kellogg, actually contradict the conclusion that he is impaired from competing for a jobs in the same class as Senior Manager of Intermodal Stack Train Delivery, or a broad range of jobs in various classes. Rogers lists a sample of twenty-four positions for which Kellogg had applied. In his deposition, Kellogg reiterates that he is qualified to hold numerous jobs at Union Pacific. He further states that he can perform all of the essential job functions of his former position as Manager of Service Scheduling, without accommodation, and that he is not limited in other major life activities. Finally, although his doctors recommend he not exceed a forty-hour work week, Kellogg testifies that this limitation is a guideline, not an inflexible restriction. These facts all suggest that Kellogg is qualified for any number of jobs in the same class as his current position, as well as in a broad range of jobs. With this evidence before us, we fail to see a genuine issue of material fact regarding whether Kellogg's

disability substantially limits him in the major life activity of working under the ADA.

**IV.**

Kellogg also argues that Union Pacific regarded him as disabled in violation of the ADA. See 42 U.S.C. § 12102(2)(C). Specifically, Kellogg contends that Union Pacific fired Kellogg from his job because of his anxiety and depression, and for the same reason failed to hire him for any of the jobs for which he applied or to offer him any assistance or encouragement that he could be retained in any management capacity.

For its part, Union Pacific asserts that Kellogg was given every opportunity to return to his senior manager position, but the only accommodation Kellogg requested would not permit him to perform the essential functions of the job. Union Pacific also denies that it stymied Kellogg's attempts to secure another position within the company. Rather, it asserts that the jobs for which Kellogg applied were promotions for which other candidates were more qualified.

To establish a "regarded as" claim under the ADA, Kellogg must show that Union Pacific perceived him as actually disabled. See Murphy v. United Parcel Serv., Inc., 527 U.S. 516, 521-22 (1999). See also 29 C.F.R. § 1630.2(l)(1) (stating a "regarded as" disabled claim requires employee to show that he or she "[h]as a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation"). Thus, our analysis is the same as under an actually disabled claim, but the question here is whether Union Pacific regarded Kellogg as precluded from more than a particular job. See Murphy, 527 U.S. at 521-22; Sutton, 527 U.S. at 491-92 .

An employer's knowledge of an employee's disability, without more, is not sufficient to establish a "regarded as" claim. Compare Taylor, 214 F.3d at 961

(concluding that an employer's knowledge of an employee's medical difficulties and expression of concern does not amount to treating an employee as if she has a permanent disability that substantially limits her life activities), and Ceretti v. Runyon, No. 97-3109, 1998 WL 403199, at *2 (8th Cir. July 16, 1998) ("Awareness alone, . . . does not suffice to set forth a claim that an employer regarded an individual as disabled."), with Heyman v. Queens Village Comm. for Mental Health for Jamaica Cmty. Adolescent Program, Inc., 198 F.3d 68, 73 (2d Cir. 1999) (finding that an employer could "regard as" disabled an employee who had lymphoma where the employer had knowledge of employee's diagnosis and a previous employee had died from the same disease). Nor is an employer required to violate the rights of other employees to accommodate a disabled individual. See Mason v. Frank, 32 F.3d 315, 319 (8th Cir. 1994). It must follow that an employer is not required to make accommodations that would subvert other, more qualified applicants for the job. Considering the evidence as a whole, we find that Kellogg cannot state a "regarded as" claim simply by showing that Union Pacific knew he was disabled and failed to hire him for other jobs for which he applied.

## V.

In 1991, Kellogg sustained an on-the-job injury that rendered him physically unable to perform his work duties as a conductor/brakeman.[3] Union Pacific and Kellogg subsequently entered into a Release and Settlement Agreement to resolve Kellogg's claims for injuries arising out of the accident.

Kellogg contends that the words and intent of the Release and Settlement Agreement he signed with Union Pacific established an indefinite contractual working relationship between them. In support of this conclusion, he points to the word

---

[3]Neither party suggests that the 1991 incident is related to the panic attack Kellogg suffered in 1997.

"maintain" in the agreement. The contract provision at issue reads: "CLYDE MICHAEL KELLOGG will maintain an employment relationship with Union Pacific in a non agreement position as a Manager of Service Scheduling and Claimant's rights will be uneffected [sic]."

For its part, Union Pacific contends that the agreement is not an employment contract that guarantees Kellogg a permanent position for life.

The resolution of this matter on summary judgment depends on whether the contract at issue is ambiguous. See McCormack v. Citibank, N.A., 100 F.3d 532, 538 (8th Cir. 1996). See also Union Ins. Co. v. Land and Sky, Inc., 529 N.W.2d 773, 776 (Neb. 1995) (stating that under Nebraska law the determination of whether a contract is ambiguous is a matter of law). "A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings . . . or where the language employed is vague or ambiguous . . . ." 780 L.L.C. v. DiPrima, 611 N.W.2d 637, 643 (Neb. Ct. App. 2000). The determination of whether a contract is ambiguous is made on an objective basis, not according to the subjective contentions of the parties. See Byrne v. Hauptman, O'Brien, Wolf & Lathrop, P.C., 608 N.W.2d 208, 214 (Neb. Ct. App. 2000). The terms of a contract are accorded their plain and ordinary meaning as an ordinary, average, or reasonable person would understand them. See id.

We find that the Release and Settlement Agreement is not ambiguous. In addition to the paragraph providing that Kellogg will maintain his position as Manager of Service Scheduling, the agreement states that monetary payment is the "sole consideration" for executing the agreement and that "Claimant accepts such payments in full settlement of all injuries and damages arising out of the subject matter of the Agreement . . . ." The agreement further provides that once Union Pacific assigned its obligation to make monetary payments to an annuity company, it would be discharged from all of its duties and obligations under the agreement. When read as a whole, the

-10-

agreement does not leave room for the conclusion that Union Pacific guaranteed Kellogg employment for life to compensate for his injuries. Rather, the agreement provides monetary compensation to Kellogg for his work-related injuries and insures that by virtue of the agreement, Kellogg would not have to forfeit the position he held or his seniority rights with the company.

## VI.

Like the district court, we cannot help but wonder why Union Pacific did not assist Kellogg, an experienced, commended and loyal employee, in finding a position with the company that would satisfy the interests of both parties. But our observation does not change the conclusion that the district court did not err in granting summary judgment for Union Pacific.

The judgment of the district court is AFFIRMED.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-