PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MICHAEL R. BOITNOTT,

   *Plaintiff-Appellant,*

  v.

CORNING INCORPORATED,

   *Defendant-Appellee.*

No. 10-1769

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, Senior District Judge.
(7:06-cv-00330-JCT)

Argued: December 8, 2011

Decided: February 10, 2012

Before GREGORY and SHEDD, Circuit Judges, and
Richard M. GERGEL, United States District Judge for the
District of South Carolina, sitting by designation.

---

Affirmed by published opinion. Judge Gergel wrote the opinion, in which Judge Gregory and Judge Shedd joined.

---

## COUNSEL

**ARGUED:** Terry Neill Grimes, GRIMES & WILLIAMS, P.C., Roanoke, Virginia, for Appellant. Clinton Stephen Morse, LECLAIRRYAN, PC, Roanoke, Virginia, for Appel-

lee. **ON BRIEF:** Joseph M. Rainsbury, LECLAIRRYAN, PC, Roanoke, Virginia, for Appellee.

---

## OPINION

GERGEL, District Judge:

This case involves a claim brought by Michael R. Boitnott ("Boitnott") against his employer, Corning Incorporated ("Corning"), under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, in which Boitnott asserted that his inability to work more than eight hours per day and rotate day/night shifts as a result of physical impairments rendered him disabled under the ADA. Boitnott further asserted that Corning had violated the ADA by failing to provide him a "reasonable accommodation" for his disability. Corning responded that, since Boitnott was physically able to work a normal forty hour work week and had not demonstrated that his impairments significantly restricted the class of jobs or a broad range of jobs available to him, he could not establish that he had a "substantial" limitation upon which to base a claim of disability under the ADA. The District Court granted summary judgment to Corning.[1] We affirm.

### I.

Boitnott began work with Corning as a maintenance engineer in 1989. He worked rotating twelve hour shifts and alternated two weeks of day shifts with two weeks of night shifts. J.A. 603.[2] Boitnott's work schedule was typical for Corning,

---

[1]The District Court also ruled that, even if Boitnott was determined to be disabled under the ADA, he was not a "qualified individual" because he could not perform "essential functions of the employment position" due to his inability to perform overtime or rotating shifts. Since we find that Boitnott was not disabled under the ADA, we find it unnecessary to reach this issue.

[2]Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties to this appeal.

which sought to promote efficiency and continuity across a twenty four hour production process by limiting its work force primarily to two twelve hour shifts and by rotating employees between daytime and nighttime schedules. J.A. 220-221. Boitnott was on leave from his position with Corning in May 2002 because of abdominal problems when he had a heart attack, which resulted in an additional period of absence. Boitnott returned to work with Corning in September 2002 to his rotating twelve hour shifts but he experienced further cardiac difficulties and treatment that required additional periods of absence. Boitnott took additional leave in November 2003 because of complaints of fatigue and was subsequently diagnosed with leukemia. His physicians determined that the leukemia did not require any treatment at that time. J.A. 654.

Boitnott advised Corning in February 2004 that he was prepared to return to work but provided a physician's statement that he was limited to working no longer than eight hours per day. J.A. 512. Since Boitnott, according to his treating physician, was capable of working a normal eight hour day and forty hour week, Corning took the position that he was not disabled under the ADA. Boitnott did not return to his twelve hour rotating shift and, instead, applied for long-term disability benefits with Corning's disability carrier, MetLife, and filed a charge of discrimination in May 2004 with the Equal Employment Opportunity Commission ("EEOC"). The charge of discrimination alleged that Corning had failed to provide Boitnott "reasonable accommodation" since his effort to return to work on February 16, 2004. J.A. 482.

MetLife initially granted Boitnott long-term disability benefits in May 2004 but terminated those benefits effective October 1, 2004 because Boitnott was capable of working a normal forty hour work week and there existed maintenance engineer positions in the area that did not require overtime work. J.A. 412-414. Subsequent to the termination of long-term disability benefits, Boitnott renewed his efforts to return

to work. He indicated an interest in a limited class of day shift positions with Corning, but these jobs required ten hour days and some overtime. Corning advised Boitnott through his union representatives that the treating physician's limitation on working no longer than eight hours per day remained a problem and requested that Boitnott advise the company if his medical condition changed. J.A. 408. On December 30, 2004, the EEOC issued a determination that there was "reasonable cause" to believe that Boitnott's rights under the ADA had been violated by Corning. J.A. 484-485.

On January 18, 2005, one of Boitnott's treating physicians indicated that he could return to work up to ten hours per day, four days per week, but made no provision for overtime. J.A. 427. Another health care provider for Boitnott forwarded Corning a new medical certificate dated April 28, 2005, indicating that Boitnott was now capable of working ten hours per day plus a "moderate" amount of overtime. J.A. 547. This new certificate represented the first instance since Boitnott had gone on leave where his treating physicians had lifted the restriction against his performance of overtime work. J.A. 409.

With the lifting of the restriction on Boitnott's performance of overtime work, Corning and the union began working toward a resolution of the issue of Boitnott's return to work. None of the limited number of day shift positions were then available. J.A. 409. Corning, however, entered into negotiations with the union on the creation of a new position in the maintenance department which was limited to day shift work of eight hours per day plus overtime. This culminated in a written agreement between the union and Corning on July 8, 2005 that authorized the creation of the new position and the right of Boitnott to apply for the position despite the fact that he was not then on active status. J.A. 389-390. The new position was posted on July 27, 2005, and when the posting expired on August 13, 2005, Boitnott was hired for the position. J.A. 391. Boitnott formally returned to work with Cor-

ning on September 5, 2005 and continues to work in the same position with the company.

## II.

The ADA prohibits any covered employer from discriminating against "a qualified individual with a disability because of the disability . . . in regard to . . . hiring, advancement, or discharge" of the employee or "other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). The Act defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position . . . ." 42 U.S.C. § 12111(8). The Act defines "disability" as "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(a).

Courts have struggled with the meaning of the term "major life activity" and, in particular, whether work constitutes "a major life activity." *See Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 199-200 (2002); *Sutton v. United Airlines, Inc.*, 527 U.S. 471, 492 (1999). *Sutton* ultimately addressed the conundrum by concluding that, if the employee otherwise could not demonstrate that his impairments substantially limited a "major life activity," the lower courts, as a "last resort," could then consider whether the employee's impairments substantially limited his or her ability to work. *Sutton*, 527 U.S. at 492.[3]

---

[3]Congress resolved this issue in 2008 amendments to the ADA by adding the term "working" to the general definition of "major life activities." 42 U.S.C. § 12102(2)(A). This amendment was effective January 1, 2009. Congress did not, however, make the amendment retroactive. *See Shin v. University of Maryland Med. Sys. Corp.*, No. 09-1126, 2010 WL 850176, at *5 (4th Cir. March 11, 2010). Since the Court ultimately assumes under *Sutton* that working is a "major life activity" for purposes of the analysis in this case, it is immaterial that the 2008 amendments are not given retroactive effect.

A plaintiff seeking to establish that he or she is disabled under the ADA must further show that any impairment "substantially limits" one or more major life activities. *See* 42 U.S.C. § 12102(1)(a). In the context of the ability to work, the plaintiff must show that the impairment "significantly restricted . . . the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3). Further, the "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." *Id.*[4]

Numerous sister circuits have addressed the issue of whether an employee under the ADA is "substantially limited" in "one or more major life activities" if the employee is capable of working a normal forty hour work week but is not able to work overtime because of a physical or mental impairment. All circuit courts which have addressed this issue have held that an employee under the ADA is not "substantially" limited if he or she can handle a forty hour work week but is incapable of performing overtime due to an impairment. *See Bialko v. Quaker Oats Co.*, 434 Fed. Appx. 139, 142 (3d Cir. 2011); *Cotter v. Ajilon Servs., Inc.*, 287 F.3d 593, 598-99 (6th Cir. 2002); *Miller v. Sw. Bell Tel. Co.*, No. 01-21318, 2002 WL 31415083, at *5 (5th Cir. Oct. 7, 2002); *Kellogg v. Union Pac. R. R. Co.*, 233 F.3d 1083, 1087-88 (8th Cir. 2000); *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 960-61 (8th Cir. 2000); *Tardie v. Rehab. Hosp. of Rhode Island*, 168 F.3d 538, 542 (1st Cir. 1999); *Berg v. Norand Corp.*, 169 F.3d 1140, 1145 (8th Cir. 1999); *see also*, *Parkinson v. Anne Arundel Med. Ctr.*, 214 F.Supp.2d 511, 514-15 (D. Md. 2002) ("[C]ourts

---

[4]The current version of 29 C.F.R. § 1630.2, which became effective on May 24, 2011, following the adoption of the 2008 amendments to the ADA, does not contain language providing that "substantially limits" requires a restriction in the ability to perform a "class of jobs or a broad range of jobs." As previously mentioned, the 2008 amendments were not made retroactive.

have uniformly held that 'an inability to work overtime is not a substantial limitation on the ability to work.'"). A number of courts have further held that plaintiffs, in their particular cases, were unable to show that the inability to work overtime significantly restricted their ability to perform "a class of jobs or a broad range of jobs in various classes." *See Taylor*, 214 F.3d at 961 ("Taylor has not shown that working 40 hours a week and lifting no more than 10 pounds limits her employment opportunities in her geographic area."); *Berg*, 169 F.3d at 1145 ("Berg has failed to show any class of jobs or broad range of jobs from different classes from which she is excluded . . . ."); *Tardie*, 168 F.3d at 542 ("[T]here are vast employment opportunities available which require only 40 hour work weeks."); *Parkinson*, 214 F.Supp.2d at 515 (Plaintiff "has presented no evidence" that "his inability to work overtime would disqualify him from numerous jobs in the health care profession.").

## III.

This Court reviews the District Court's grant of summary judgment *de novo*. *Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Id.* For purposes of reviewing the grant of summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

It is important to note from the outset the limited time period at issue in this case. Boitnott alleges a failure to provide him a reasonable accommodation from the time he sought to return to work on February 14, 2004 until the time he actually returned to work on September 5, 2005. However, for a portion of this time, from May 2004 through September

2004, Boitnott was on long-term disability with Corning's disability carrier, MetLife. Further, Boitnott's physician indicated that his return to work in February 2004 was conditioned on his working no longer than eight hours per day. J.A. 512. Boitnott was not cleared by his physician to work overtime until late April 2005. J.A. 547. Once that hurdle was overcome, Corning moved deliberately through the collective bargaining process to obtain agreement with the union to create a new day time position in the maintenance department and to allow Boitnott to apply for the position from an inactive status. When an agreement was finally reached between Corning and Boitnott's union on July 8, 2005, the new position was promptly posted and Boitnott was selected as soon as the time for posting had expired. J.A. 389-391.

The uncontested facts set forth above establish that the primary impediment to Boitnott's return to work was his inability to perform overtime work.[5] From February 2004 forward, he was consistently cleared to work a normal eight hour day and/or a forty hour week. Assuming for purposes of this analysis that Boitnott's alleged inability to work could constitute, pursuant to *Sutton*, a "major life activity" we would then be confronted squarely with the question of whether Boitnott's ability to work was "substantially limit[ed]" where he was capable of working forty hours per week but was unable to perform overtime work due to his impairments. The overwhelming and uniform authority from numerous sister circuits is that an inability to perform overtime work, standing alone, is not a "substantial" limitation under the ADA. *See Bialko*, 434 Fed. Appx. at 142; *Cotter*, 287 F.3d at 598-99; *Miller*, 2002 WL 31415083, at *5; *Kellogg*, 233 F.3d at 1087-88;

---

[5]Corning initially asserted that Boitnott's inability to work overtime and rotating shifts were impediments to his returning to work. The record is uncontested, however, that once Boitnott was cleared to work overtime Corning no longer insisted that he work rotating shifts as a condition of his return. Therefore, we have analyzed this case on the basis of Boitnott's inability to perform overtime work and whether such a restriction constituted a substantial limitation on a major life activity under the ADA.

*Taylor*, 214 F.3d at 960-61; *Tardie*, 168 F.3d at 542; *Berg*, 169 F.3d at 1145. We find the reasoning of such authorities persuasive and, therefore, join the other circuits in holding that an inability to work overtime does not constitute a "substantial" limitation on a major life activity under the ADA.

We have also reviewed the record, in a light most favorable to Boitnott as the non-moving party, to determine if there was evidence to demonstrate that his inability to work overtime "significantly restricted" his "ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3). This individualized inquiry is in recognition that Boitnott's particular impairments and/or the labor market in his area could, under certain circumstances, make his inability to work overtime a substantial restriction on a class of jobs or a broad range of jobs in his area of maintenance engineering. *See Cotter*, 287 F.3d at 598; *Kellogg*, 233 F.3d at 1087. The record contains no evidence indicating that Boitnott's inability to work overtime "significantly restricted" his ability to perform a class of jobs or a broad range of jobs in various classes.

### IV.

Based upon the foregoing, we conclude that Boitnott's inability to work overtime did not constitute a substantial limitation on a major life activity and that he was, consequently, not disabled under the ADA. Therefore, the decision of the District Court is

*AFFIRMED*.