Dean **WORDEKEMPER**, Plaintiff,

v.

**WESTERN IOWA HOMES & EQUIPMENT, INC., Midwest Homes, Inc., Lori Handlos, and Patrick Malloy,** Defendants.

**No. C 01–3085–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

March 17, 2003.

---

James T. Fitzsimmons, Fitzsimmons & Vervaecke Law Firm, Mason City, IA, Mark D. Sherinian, Sherinian & Walker Law Firm, West Des Moines, IA, for Plaintiff.

Carla Heathershaw Risko, Michael E. Currans, Robert T. Cannella, Fitzgerald Schorr Barmettler & Brennan PC, Omaha, NE, for Defendants.

## MEMORANDUM OPINION AND OR-DER REGARDING DEFEN-DANTS' MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................ 976
   A. Procedural Background ............................................ 976
   B. Factual Background ............................................... 977

II. LEGAL ANALYSIS ..................................................... 978
   A. Standards For Summary Judgment ................................ 978
   B. Wordekemper's Disability Discrimination Claim .................. 979
      1. Arguments of the parties ...................................... 979
      2. Analysis ...................................................... 980
         a. Evidence of "disability" .................................. 981
            i. "Actual" disability ................................. 981
            ii. Record of disability ................................ 984
            iii. Perceived disability ................................ 984
         b. Evidence of "pretext" .................................... 986
            i. WIHE and Handlos ................................. 986
            ii. Midwest Homes and Malloy ........................ 986
   C. Wordekemper's Common-law Retaliation Claim .................. 987
      1. Arguments of the parties ...................................... 987
      2. Analysis ...................................................... 988
         a. WIHE and Handlos ...................................... 988
         b. Midwest Homes and Malloy ............................. 988

III. CONCLUSION ........................................................ 990

## I. INTRODUCTION

### A. Procedural Background

In this action, filed October 10, 2001, plaintiff Dean Wordekemper asserts disability discrimination claims pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., and the Iowa Civil Rights Act (ICRA), IOWA CODE CH. 216, and a wrongful discharge claim pursuant to Iowa common law. The defendants are Western Iowa Homes & Equipment, Inc. (WIHE), Midwest Homes, Inc., Lori Handlos, who was WIHE's sole proprietor, and Patrick Malloy, who held managerial positions with WIHE and subsequently with Midwest Homes. Somewhat more specifically, in his ADA and ICRA claims, Wordekemper alleges that he was not rehired when Midwest Homes "took over" WIHE's business because of his actual disability, perceived disability, or record of disability arising from a back injury that he suffered while employed with WIHE.

In his common-law claim, Wordekemper alleges that the defendants retaliated against him for seeking worker's compensation for his back injury by refusing to rehire him when Midwest Homes "took over" WIHE's business.

This matter comes before the court pursuant to the defendants' January 13, 2003, motion for summary judgment on all of Wordekemper's claims. With leave of the court, the defendants amended their submissions in support of their motion on February 14, 2003, and Wordekemper resisted the motion on February 18, 2003. The defendants filed a reply on February 26, 2003, accompanied by a Supplemental Index of Evidence. On March 11, 2003, the court received a courtesy copy of an application from Wordekemper for leave to file a surreply, and on March 13, 2003, the court received a response from the defendants, in letter form, by facsimile transmission.[1] Neither party requested oral ar-

1. Wordekemper's surreply was prompted by the defendants' challenge, in their reply brief, to the admissibility for summary judgment purposes of certain evidence from "experts," an "independent medical evaluation" by Dr. Keith Riggins, dated July 18, 2000, and a "vocational rehabilitation evaluation" by Lewis E. Vierling, dated February 14, 2003. The defendants contend that neither report was properly disclosed, prior to inclusion in Wordekemper's resistance, so that neither one should be considered part of the summary judgment record. The defendants had previously advised Wordekemper that they believed that his expert disclosures, of these and other experts, were not in compliance with applicable rules. In the proffered surreply, Wordekemper concedes that the defendants had not received Mr. Vierling's report prior to its inclusion in Wordekemper's resistance to the defendants' summary judgment motion. However, Wordekemper asserts that Dr. Riggins's report had been communicated to the defendants in various ways. In their letter in response to the application to file a surreply, the defendants dispute Wordekemper's contention that any defendant in this action had received Dr. Riggins's report prior to its in-

clusion in Wordekemper's resistance, because the defendants contend that his report had only been disclosed in the workers' compensation dispute in which only WIHE's insurance carrier, not WIHE itself, was a party.

There is no provision in either the local or federal rules of civil procedure for a "surreply." See, e.g., N.D. IA. L.R. 7.1(g) (authorizing a reply without leave of court, but not a surreply); N.D. IA. L.R. 56.1(d) (same for summary judgment motions). Nor was the surreply filed within the time allowed for a "reply." See id.; N.D. IA. L.R. 56.1(d). However, the court finds that it need not consider the question of non-compliance with applicable rules or become embroiled in a dispute over whether the expert opinions at issue are or are not properly part of the summary judgment record. Rather, for the reasons stated herein, the disposition of the defendants' motion for summary judgment in no way depends upon the evidence from Dr. Riggins or Lewis Vierling. Therefore, the defendants will not be prejudiced by allowing Wordekemper to file a surreply. The court will take up the issue of the admissibility of Dr. Riggins's and Mr. Vierling's reports at trial, if this matter does indeed proceed to

guments on the defendants' motion for summary judgment, so that the motion is now fully submitted.

### B. Factual Background

Whether or not a party is entitled to summary judgment ordinarily turns on whether or not there are genuine issues of material fact for trial. *See, e.g., Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996). Nevertheless, the court will not attempt here a comprehensive review of the undisputed and disputed facts in the record. Rather, the court will present here only sufficient factual background to put in context the parties' arguments for and against summary judgment on Wordekemper's claims. More attention will be given to specific factual disputes, where necessary, in the court's legal analysis.

The parties agree that Wordekemper began his employment with WIHE in Carroll, Iowa, as a general laborer in September 1999. WIHE manufactured modular homes and hog confinements. On or about November 17, 1999, Wordekemper suffered a work-related back injury, which was ultimately diagnosed as a ruptured disc. Wordekemper underwent back surgery and was off work as a consequence for some weeks in late 1999 and early 2000. He returned to work in January 2000 with restrictions on hours and lifting. Eventually, he returned to full-time work, although the parties dispute whether his other temporary restrictions—for example, on lifting—had been entirely removed by late February 2000. Patrick Malloy, Darrell Hunt, and Joe Loneman, managers or supervisors for WIHE, and later for Midwest Homes, all testified that they had been told by Wordekemper or understood that Wordekemper's remaining work restrictions had all been lifted by late February. Wordekemper contends that, although he had returned to full-time work

by that time, he was still subject to restrictions, never told anyone otherwise, and instead, indicated to his supervisors that he had a doctor's appointment scheduled for March 10, 2000, at which his restrictions would be reviewed.

In any event, WIHE was suffering from serious financial difficulties by February 2000. Lori Handlos, the sole proprietor of WIHE, was unable to negotiate satisfactory arrangements with WIHE's creditor, On–Site Credit Services, Inc., subsequently known as MIC Financial, Inc., and On–Site instituted a replevin action forcing WIHE out of business and Handlos into personal bankruptcy. WIHE's last full payroll was on March 3, 2000, although a handful of employees, including Wordekemper, received paychecks from WIHE on March 10, 2000, and an even smaller group of employees received paychecks for a few remaining hours on March 17, 2000. Wordekemper was apparently informed that his employment was terminated on March 10, 2000.

Apparently recognizing that WIHE's financial prospects were poor, Pat Malloy, a managerial employee of WIHE, sought out a long-time friend, Jeff Minnich, to see if he would be interested in investing in a business that would manufacture modular homes and hog confinements on the site then occupied by WIHE in Carroll, Iowa. Minnich was interested, but was not interested in "buying" either WIHE or its assets. Instead, Malloy and Minnich agreed that they would start a new business if WIHE did, indeed, fail. Malloy incorporated Midwest Homes on January 20, 2000. The shareholders of the new company were Minnich and his wife. Malloy was employed as the general manager of the new company, but did not have an ownership interest. Midwest Homes began operations on the same site that WIHE had

trial, and if the parties deem it necessary to reassert the issue at that time.

occupied about March 4, 2000. However, there is no evidence in the record that Midwest Homes ever purchased any of WIHE's assets or in any way assumed any of WIHE's liabilities, although Midwest Homes may have "taken over" a few projects that WIHE had lined up, but clearly was not going to start or complete.

Prior to beginning operations, Midwest Homes hired the majority of WIHE's employees, including Lori Handlos. However, Handlos had no management responsibilities or ownership interest in the new company. During February 2000, before WIHE closed or Midwest Homes opened for business, Malloy recruited Joe Loneman and Darrell Hunt, both of whom were supervisors at WIHE, to be supervisors for Midwest Homes when it began operations. At some time in late February, Malloy, Loneman, and Hunt met to decide which of WIHE's employees should be hired by the new company, recognizing that Midwest Homes would not have enough work, at least initially, to employ all of WIHE's employees. The criteria used by Malloy, Loneman, and Hunt are subject to dispute—although the court will defer for now the question of whether that dispute is "genuine"—but there is no dispute that Wordekemper was not chosen as one of the employees of the new company.

Although Wordekemper, and a few other employees not selected for employment with Midwest Homes, continued to work on the site for approximately a week after Midwest Homes began operations, the defendants contend that those employees were completing projects for WIHE. Wordekemper contends that he was never notified that he was employed only by WIHE

and only to complete certain projects. On the other hand, there is no evidence that he was ever told that he had been chosen as an employee of Midwest Homes. There is also no dispute that Wordekemper's final paychecks were from WIHE, not Midwest Homes, or that Wordekemper was eventually told, on about March 10, 2000, that he had been terminated. Handlos told Wordekemper and his wife, when she called to complain about Wordekemper's termination, that WIHE was out of business and couldn't continue to employ anybody. It is clear from the record that the manner in which employees were informed that WIHE was closing, that Midwest Homes was starting up as a separate company, which employees of WIHE would be employed by Midwest Homes, and which would not—and hence, who would be terminated when WIHE finally expired—was haphazard at best.[2]

At the center of the parties' disputes is Wordekemper's contention that his back injury and workers' compensation claim were the reasons that he was not selected for employment with Midwest Homes, and the defendants' contrary contention that no injuries, disabilities, perceived disabilities, or workers' compensation claims had anything to do with the selection of WIHE employees who would be employed by Midwest Homes. The court will address this and other key disputes in more detail in its legal analysis.

## II.  LEGAL ANALYSIS

### A.  Standards For Summary Judgment

As this court has explained on a number of occasions, applying the standards of

---

**2.** Only one witness, Jared Cox, testified in deposition that there had been any sort of general announcement from Patrick Malloy concerning the transition from WIHE to Midwest Homes. Other persons who were selected for employment by Midwest Homes, and

Wordekemper, who was not, testified that they did not recall any such announcement and only received individual, *ad hoc,* notice about the termination of their employment with WIHE and/or their selection for employment with Midwest Homes.

Rule 56 of the Federal Rules of Civil Procedure providing for summary judgment, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir.1990). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Quick*, 90 F.3d at 1377 (same). Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston v. NME Hosps., Inc.*, 133 F.3d 1104, 1107 (8th Cir.1998); *Reed v. Woodruff County, Ark.*, 7 F.3d 808, 810 (8th Cir.1993). When a moving party has carried its burden under Rule 56(c), the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex. rel. United States v. Crane Co.*, 122 F.3d 559, 562 (8th Cir.1997), *cert. denied*, 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach v. Sears*, 49 F.3d 1324, 1325 (8th Cir.1995). An issue of material fact is "genuine" if it has a real basis in the record. *Hartnagel*, 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 586–87, 106 S.Ct. 1348). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," *i.e.*, are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Beyerbach*, 49 F.3d at 1326; *Hartnagel*, 953 F.2d at 394. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.*, 113 F.3d 1484, 1492 (8th Cir.1997). Finally, this court has repeatedly taken note of the rule in this circuit that, because summary judgment often turns on inferences from the record, summary judgment should seldom or rarely be granted in employment discrimination cases. *See, e.g., Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir. 1991)). The court will apply these standards to the defendants' motion for summary judgment on Wordekemper's claims.

### B. Wordekemper's Disability Discrimination Claim

#### 1. Arguments of the parties

In support of their motion for summary judgment on Wordekemper's disability discrimination claims, the defendants contend that there are no genuine issues of material fact that Wordekemper was not disabled within the meaning of the governing statutes—in terms of "actual," "perceived," or "record of" disability—where there is no evidence that he was, was perceived to be, or had a record of being substantially limited in any major life activity. The defendants also contend that their legitimate,

non-discriminatory reasons for not continuing Wordekemper's employment are unassailable. First, they contend that WIHE closed its doors and terminated *all* of its employees under pressure from its primary creditor, and that Lori Handlos, the sole owner of the company, was forced to declare personal bankruptcy. Second, as to Midwest Homes, which the defendants contend is an entirely separate company from WIHE, with different owners, the defendants all stoutly contend that Wordekemper's back injury had nothing to do with the new company's decision not to hire him. This is so, they contend, even though the decisionmakers had all previously worked for WIHE and they chose to hire most of WIHE's other employees. The defendants contend that the decisionmakers based their decisions on the fact that they knew other employees better and believed that their skills were better suited to the needs of the new company. They also point out that the decisionmakers all testified in depositions that they understood that Wordekemper's work restrictions from his back injury had been lifted at the time that they were making hiring decisions, and that the new company in fact hired a number of WIHE's other former employees who were known to have prior work injuries or work restrictions. Finally, they point out that Wordekemper was one of the last employees hired by WIHE before its financial collapse.

Not surprisingly, Wordekemper takes a very different view of the record evidence. He contends that he has identified more than enough evidence to generate genuine issues of material fact that he was actually disabled, had a record of a disability, or was perceived to be disabled, with reference to limitations in the major life activities of lifting, bending, and working. He disputes the defendants' contentions that he told them that his restrictions, arising from his back injury, had been lifted prior to the "rehiring" decision, and instead contends that, subsequently, he continued to suffer from substantial limitations and permanent restrictions. He also points to evidence that one of the people making hiring decisions for Midwest Homes, Joe Loneman, told a co-worker that he thought Wordekemper had sustained his back injury before coming to work for WIHE, but had claimed that it was work-related to get workers' compensation benefits from WIHE, that Wordekemper couldn't do the work available at Midwest Homes because of his back injury, and that he was "worthless" because of that injury. Although Wordekemper does not attempt to marshal any evidence to rebut WIHE's and Handlos's contention that the closing of WIHE is the real reason for his termination from that company, he does argue that Midwest Homes' failure to rehire him was discriminatory, based on his assertion that the decisionmakers have given contradictory and internally inconsistent explanations for the decision not to rehire him.

### 2. Analysis

In *Barnes v. Northwest Iowa Health Center,* 238 F.Supp.2d 1053 (N.D.Iowa 2002), this court outlined the analytical framework for a disability discrimination claim, as follows:

> The ADA affords protection from discrimination to any "qualified individual with a disability." 42 U.S.C. § 12112(a). "A plaintiff who raises a claim of disability discrimination bears the initial burden of establishing a prima facie case." *Lajeunesse v. Great Atlantic & Pac. Tea Co.,* 160 F.Supp.2d 324, 330 (D.Conn. 2001) (citing *Ryan v. Grae & Rybicki, P.C.,* 135 F.3d 867, 869 (2d Cir.1998); *Wernick v. Federal Reserve Bank,* 91 F.3d 379, 383 (2d Cir.1996)). If the plaintiff fails to establish any element of her *prima facie* case, then summary judgment may be appropriate. *Kellogg v. Union Pac. RR. Co.,* 233 F.3d 1083,

1086 (8th Cir.2000). However, if the plaintiff proves her *prima facie* case, the defendant must then articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant successfully does so, the burden shifts back to the plaintiff to demonstrate that the employer's proffered legitimate reason is merely a pretext for unlawful discrimination. *Id.* Thus, in order for [the plaintiff] to recover on her ADA claim, she must establish that, at the time she alleges she was discriminated against: (1) she was disabled within the meaning of the ADA; (2) she was qualified to perform the essential functions of the position; and (3) she suffered an adverse employment action under circumstances giving rise to an inference of unlawful discrimination based on disability. *E.g., Dropinski v. Douglas County, Neb.,* 298 F.3d 704, 706 (8th Cir.2002) (outlining *prima facie* case of disability discrimination) (citing *Greer v. Emerson Elec. Co.,* 185 F.3d 917, 921 (8th Cir.1999)); *Cooper v. Olin Corp., Winchester Div.,* 246 F.3d 1083, 1087 (8th Cir.2001) (same) (citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1135 (8th Cir.1999) (*en banc*)); *Heaser v. Toro Co.,* 247 F.3d 826, 830 (8th Cir.2001) (same); *Maziarka v. Mills Fleet Farm, Inc.,* 245 F.3d 675, 678 (8th Cir.2001) (same); *Taylor v. Nimock's Oil Co.,* 214 F.3d 957, 959–60 (8th Cir.2000) (same); *Treanor v. MCI Telecomm. Corp.,* 200 F.3d 570, 574 (8th Cir.2000) (same); *Cravens v. Blue Cross & Blue Shield,* 214 F.3d 1011, 1016 (8th Cir.2000) (same); *Browning v. Liberty Mut. Ins. Co.,* 178 F.3d 1043, 1047 (8th Cir.1999) (same).

*Barnes,* 238 F.Supp.2d at 1066–67. In their summary judgment motion, the defendants challenge both Wordekemper's *prima facie* case, in terms of whether or not Wordekemper can generate genuine issues of material fact that he is "disabled," and Wordekemper's ability to generate a genuine issue of material fact that their legitimate, non-discriminatory reasons for their employment decisions are "pretextual."

### a. Evidence of "disability"

The parties recognize that "disability" within the meaning of the ADA [3] is defined in three discrete ways as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Thus, the first question is, which type or types of disability are at issue in this case? It appears, based on the arguments of the parties, that it is all three.

### i. "Actual" disability.

As to "actual" disability, this court very recently explained,

we will look to the ADA and underlying federal regulations in developing standards under the ICRA for disability discrimination claims. [Citations omitted].... Given the identity of the applicable legal principles and analytical framework with respect to the question of whether one has a disability under the ADA and the ICRA, our subsequent discussion of whether [the plaintiff] is disabled applies equally to her claims under both statutes."). Therefore, the court's discussion of "disability" here applies equally to Wordekemper's claims under the ADA and the ICRA. *Id.*

3. The court is aware that Wordekemper has asserted disability discrimination claims under both the ADA and state law. However, the parties have not argued, and the court cannot find, that there is some significant difference between the way "disability" is defined under the ADA and the way it is defined under the Iowa Civil Rights Act. *See, e.g., Bearshield v. John Morrell & Co.,* 570 N.W.2d 915, 918 (Iowa 1997) ("Given the common purposes of the ADA and the ICRA's prohibition of disability discrimination, as well as the similarity in the terminology of these statutes,

The Equal Employment Opportunity Commission ("EEOC") has issued regulations defining the three elements of disability contained in subsection (A). *See* 29 C.F.R. § 1630.2 (2002). Those elements are: (1) a physical or mental impairment; (2) that affects a major life activity; (3) and whose effects substantially limit that activity. *See id.; accord Bragdon v. Abbott*, 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (directing district courts to perform three step inquiry to assess whether a particular condition constitutes a disability for purposes of subsection (A) of 42 U.S.C. § 12102(2)). "Physical or mental impairment" is defined as "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." *Id.* § 1630.2(h)(1). "Major Life Activities" are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." *Id.* § 1630.2(i). In addition, the Eighth Circuit has expanded upon the non-exhaustive list found in the regulations and has held that sitting, standing, lifting, and reaching may also qualify as major life activities. *Cooper [v. Olin Corp.]*, 246 F.3d [1083,] 1088 [ (8th Cir.2001) ] (citing *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 948 (8th Cir. 1999)); *cf. Bragdon*, 524 U.S. at 639, 118 S.Ct. 2196 (emphasizing that the regulations provide an illustrative, rather than exhaustive, list of major life activities). Further, in *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002), the Court explained that " '[m]ajor life activities' ... refers to those activities that are of central importance to daily life." *Id.* at 691. The ADA's "substantially limits" requirement indicates that an impairment must interfere with a major life activity " 'considerabl[y]' or 'to a large degree.' " *Id.*

*Barnes*, 238 F.Supp.2d at 1068 (footnote omitted).

■ Thus, the first element of proof for an actual disability claim is that the employee must have a "mental or physical impairment." *Id.* Wordekemper contends, and the defendants do not dispute, that he had a physical impairment arising from a back injury. What they dispute is the extent to which that impairment "substantially limited" any "major life activity," and if it did, whether it did so more than temporarily. *See, e.g., id.* at 1071 (citing cases standing for the proposition that, "[a]s a matter of law, an impairment's impact must be permanent or long term to qualify as a substantially limiting impairment within the meaning of the ADA," not merely temporary) (internal quotation marks and citations omitted).

As the Supreme Court recently explained,

It is insufficient for individuals attempting to prove disability status under this test [of actual disability] to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those "claiming the Act's protection ... to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience ... is substantial."

*Toyota Motor Mfg.*, 534 U.S. at 196–97, 122 S.Ct. at 691–92 (quoting *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999), with alterations provided by the *Toyota Motor Mfg.* Court). As this court pointed out in *Barnes*,

In *Toyota Motor*, the Court emphasized the need to perform an individualized assessment of a person's physical impairment to determine whether that impairment substantially limits the major life activities of that particular person. *See id.* at 692. The Court reasoned that medical diagnoses alone are insufficient to qualify a person as disabled within the meaning of subsection (A) of the ADA because symptoms vary in degree and extent from person to person. *Id.* In *Toyota Motor*, the respondent suffered from carpal tunnel. *Id.* The Court noted the following:

> An individualized assessment of the effect of an impairment is particularly necessary when the impairment is one whose symptoms vary widely from person to person. Carpal tunnel syndrome, one of respondent's impairments, is just such a condition. While cases of severe carpal tunnel syndrome are characterized by muscle atrophy and extreme sensory deficits, mild cases generally do not have either of these effects and create only intermittent symptoms of numbness and tingling. Studies have further shown that, even without surgical treatment, one quarter of carpal tunnel cases resolve in one month, but that in 22 percent of cases, symptoms last for eight years or longer. When pregnancy is the cause of carpal tunnel syndrome, in contrast, the symptoms normally resolve within two weeks of delivery. Given these large potential differences in the severity and duration of the effects of carpal tunnel syndrome, an individual's carpal tunnel syndrome diagnosis, on its own, does not indicate whether the individual has a disability within the meaning of the ADA.

*Id.*

*Barnes*, 238 F.Supp.2d at 1069.

Plainly, the symptoms from a "back injury," and even from a back injury resulting in a "ruptured disc" requiring surgery, as was the case here, "vary widely from person to person," necessitating "[a]n individualized assessment of the effect of an impairment." *Toyota Motor Mfg.*, 534 U.S. at 198–99, 122 S.Ct. at 692. Even so, Wordekemper has not come forward with any evidence generating a genuine issue of material fact that his back injury actually resulted in permanent substantial limitations in any major life activity. *See* FED. R. CIV. P. 56(e) (in resisting summary judgment, the non-movant bears the burden to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka*, 122 F.3d at 562; *McLaughlin*, 50 F.3d at 511; *Beyerbach*, 49 F.3d at 1325. Even considering evidence of medical evaluations several months *after* the employment decisions at issue here, Wordekemper has shown no more than some continuing lifting restrictions and a comparatively minor limitation on "bending," which, while occasionally inconvenient, and occasionally even limiting to Wordekemper's routine behavior or preclusive of certain recreational activities, do not, as a matter of law, have a "substantially limiting" effect " 'in terms of [his] own experience' " on any major life activity, such as lifting or bending. *Toyota Motor Mfg.*, 534 U.S. at 198–99, 122 S.Ct. at 691–92 (quoting *Albertson's, Inc.*, 527 U.S. at 567, 119 S.Ct. 2162); *see also Dropinski v. Douglas County, Neb.*, 298 F.3d 704, 707 n. 2 (8th Cir.2002) ("Under this court's precedent, 'a "general lifting restriction imposed by a physician, without more, is insufficient to constitute a disability.' "

*Mellon v. Federal Express Corp.*, 239 F.3d 954, 957 (8th Cir.2001) (quoting *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1207 (8th Cir.1997)); *but see Webner v. Titan Distrib., Inc.*, 267 F.3d 828, 834 (8th Cir.2001) (recognizing that a back injury that substantially limits a person's ability to work, to twist, to bend, and to stand, in addition to limiting their ability to lift could constitute a physical impairment that substantially limits one or more major life activities).").

Furthermore, the record shows beyond dispute that Wordekemper is not substantially limited in the "alternative" major life activity of working. *See* 29 C.F.R. pt 1630, App. § 1630.2(j) (1998) (the major life activity of "working" is to be considered as a last resort only "[i]f an individual is not substantially limited with respect to any other major life activity"). Wordekemper has pointed to no evidence that he is " 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.' " *Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 949 (8th Cir.1999) (quoting *Doane v. City of Omaha*, 115 F.3d 624, 627 (8th Cir.1997), *cert. denied*, 522 U.S. 1048, 118 S.Ct. 693, 139 L.Ed.2d 638 (1998)). Rather, the record shows that, within eight weeks of losing his job with WIHE, Wordekemper began working sixty or more hours a week as a welder, and that he continues to work full-time in that position at this time, and he has never identified what, if any, class of jobs or broad range of jobs in various classes he cannot perform.

Thus, Wordekemper's disability discrimination claims under federal and state law cannot proceed on the basis of "actual" disability.

■ *ii. Record of disability.* This court also explained the requirements for

proof of a "record" of disability in *Barnes*, as follows:

To establish the existence of a record of a disability, an individual must show that she "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Costello v. Mitchell Pub. Sch. Dist. 79*, 266 F.3d 916, 924 (8th Cir.2001) (citing 29 C.F.R. § 1630.2(k)). "In order to have a record of a disability, an employee's 'documentation must show' that she has a history of or has been subject to misclassification as disabled." *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 961 (8th Cir.2000) (citing *[Weber v.] Strippit*, 186 F.3d [907,] 915 [ (8th Cir.1999), *cert. denied*, 528 U.S. 1078, 120 S.Ct. 794, 145 L.Ed.2d 670 (2000) ] ).

*Barnes*, 238 F.Supp.2d at 1091. Wordekemper has, again, pointed to no such evidence here. *See* FED. R. CIV. P. 56(e) (in resisting summary judgment, the non-movant bears the burden to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial"); *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka*, 122 F.3d at 562; *McLaughlin*, 50 F.3d at 511; *Beyerbach*, 49 F.3d at 1325. Instead, he points to no more than a "record" of routine, temporary restrictions from a back injury, including surgery, a period of light-duty work and rehabilitation, and eventual lifting of all or nearly all work restrictions prior to his termination. Thus, Wordekemper's disability discrimination claims under federal and state law cannot proceed on the basis of "record of" disability, either.

■ *iii. Perceived disability.* In *Sutton v. United Air Lines*, 527 U.S. 471, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999), the

Supreme Court interpreted the provision of the ADA defining "perceived disability," 42 U.S.C. § 12102(2)(C), as follows:

> There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton,* 527 U.S. at 489, 119 S.Ct. 2139 (1999). Thus, "perceived disability" involves either (1) a perception that the plaintiff has a substantially limiting impairment, when he has no impairment; or (2) a perception that he has a substantially limiting impairment, when his actual impairment is not so limiting. *Id.* The perception is one "based upon speculation, stereotype, or myth," rather than upon an individualized inquiry into the plaintiff's actual condition. *Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995).

▪ As to this category of "disability," the court finds that Wordekemper *has* generated genuine issues of material fact. Those genuine issues of material fact depend upon the deposition testimony of Jared Cox, a co-worker, that at approximately the time that employment decisions for Midwest Homes were being made, one of the decisionmakers, Joe Loneman, made comments about Wordekemper in a "negative" way, to the effect that Loneman "thought that [Wordekemper] had come to work at Western Iowa Homes with a back injury, that he came from a different—

wherever he worked before … because [Loneman] didn't think [Wordekemper's] back was hurt while working at Western Iowa Homes"; that Loneman "didn't feel [Wordekemper] could do the work that he wanted him to do"; that Loneman thought that Wordekemper "wouldn't be able to do the work the right way [Loneman] wanted it done and [Loneman] just kept saying that, 'Oh, I think [Wordekemper] came here with the back injury so we'd have to pay for it' "; and that Loneman thought that Wordekemper "was worthless," which Cox took to mean "because of his back problem." *See* Plaintiff's Appendix at 161–62 (Cox Deposition at 15–17). These comments by a person actually involved in the decision making concerning who would get a job with Midwest Homes undeniably carries implications of a disability discriminatory animus, a perception of permanent and substantially limiting impairments in the major life activity of working, and reliance for an opinion about Wordekemper's limitations "based upon speculation, stereotype, or myth," rather than upon an individualized inquiry into Wordekemper's actual condition. *Wooten,* 58 F.3d at 386. The defendants point out that Loneman denies ever making such comments and that none of the people Cox identified as also present when Loneman supposedly made these comments recalls hearing any such thing. Nevertheless, it is not for the court to weigh the evidence on a motion for summary judgment, *see Quick,* 90 F.3d at 1376–77; *Johnson,* 906 F.2d at 1237, and Cox's testimony is a real basis in the record for Wordekemper's contention that there are genuine issues of material fact concerning perceived disability. *See Hartnagel,* 953 F.2d at 394 (citing *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–87, 106 S.Ct. 1348). Consequently, Wordekemper has generated genuine issues of material fact as to "perceived disability," and his

claim proceeds to the next stage of the analysis on that limited basis.

### b. Evidence of "pretext"

The next stage of the analysis pertinent here centers on the defendants' contentions that, even if Wordekemper is "disabled" within the meaning of the applicable statutes, he cannot generate genuine issues of material fact that the reasons given for terminating him or not rehiring him were a pretext for disability discrimination. *See Barnes,* 238 F.Supp.2d at 1067–68 (second and third stages of the analysis of a disability discrimination claim). The court concludes that the outcome of this part of the analysis depends upon which defendants are asserting the contention.

**i. WIHE and Handlos.** WIHE and Handlos contend that *all* of WIHE's employees were terminated when WIHE ceased operations under pressure from its primary creditor. The court does not see where Wordekemper has even attempted to generate a genuine issue of material fact that this proffered legitimate, non-discriminatory reason for WIHE's decision to terminate him was a pretext for discrimination. Nor has Wordekemper attempted to generate any genuine issue of material fact that Handlos had some kind of ownership interest or managerial authority in Midwest Homes, such that there would be some potential basis for Handlos to be held individually liable for the actions of Midwest Homes. Although Wordekemper points to evidence that his employment continued through the time that Midwest Homes took over the business premises previously occupied by WIHE, thus apparently attempting to generate genuine issues of material fact that he was actually

employed by Midwest Homes, he has not—or has not attempted—to show that WIHE and Midwest Homes were somehow the "same entity," or that Midwest Homes was the "successor" of WIHE, nor could he do so in light of undisputed evidence that WIHE and Midwest Homes were separate entities with different owners, and that Midwest Homes had no agreement with WIHE to purchase WIHE's assets or to assume its obligations or liabilities. Therefore, summary judgment in favor of WIHE and Handlos is appropriate on Wordekemper's disability discrimination claims. *See Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548 (if a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law"); *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d at 1492 (same).

**ii. Midwest Homes and Malloy.**[4] A different result, however, obtains as to Midwest Homes and Patrick Malloy. The court is not, itself, persuaded by Wordekemper's attempts to demonstrate "contradictions" and "inconsistencies" in the justifications for not selecting Wordekemper for employment with Midwest Homes that Wordekemper contends can be found in the testimony of the persons who made that employment decision, such that there might be a genuine issue of material fact as to whether or not their proffered reasons are pretexts for disability discrimination. However, the court concludes that the ultimate determination on that issue is properly left to a jury. *See Quick,* 90 F.3d at 1376–77 (it is not for the court to weigh

---

**4.** The defendants have not put at issue the question of whether Patrick Malloy can be held individually liability for disability discrimination under either the ADA or the

ICRA. Therefore, the court will not pass on that issue, and will not distinguish between the bases for liability of Midwest Homes and Malloy in this ruling.

the evidence on a motion for summary judgment); *Johnson*, 906 F.2d at 1237 (same). Moreover, the same evidence that Wordekemper relies on to generate a genuine issue of material fact as to "perceived disability" also generates genuine issues of material fact as to the "true reason" for Joe Loneman's opposition to Wordekemper's employment with Midwest Homes. Even if Loneman did not make the employment decision alone, the evidence provided by Jaren Cox, coupled with the evidence that Malloy and Hunt relied to some extent on Loneman's evaluations of the fitness of employees of WIHE for employment with Midwest Homes, is sufficient to taint the decisionmaking process with an inference of discriminatory animus. Therefore, Midwest Homes and Patrick Malloy *are not* entitled to summary judgment on Wordekemper's claims of disability discrimination.

### C. *Wordekemper's Common-law Retaliation Claim*

#### 1. *Arguments of the parties*

In Count III of his Complaint, Wordekemper alleges that the defendants retaliated against him for seeking worker's compensation for his back injury by refusing to rehire him when Midwest Homes "took over" WIHE's business. The defendants also seek summary judgment on this claim. As to WIHE and Handlos, the defendants contend that there is no genuine issue of material fact that Wordekemper was terminated, with all the rest of WIHE's employees, because WIHE closed, not because WIHE retaliated against Wordekemper for filing a workers' compensation claim. As to Midwest Homes and Malloy, the defendants contend that, even supposing that there is a common-law cause of action for "retaliatory failure to hire" based on workers' compensation claims in prior employment, no such claim will lie here, because the prior workers' compensation claims of employ-

ees of a new company, such as Midwest Homes, are irrelevant to the cost of that new company's workers' compensation insurance.

Wordekemper, however, argues that summary judgment is not appropriate on this claim. He contends that Iowa courts have authorized the common-law cause of action to protect employees from adverse consequences for *seeking* or *pursuing* workers' compensation benefits, not just from adverse consequences for *filing* for such benefits. He argues that limiting the cause of action in the way that the defendants assert would mean that only the act of filing for workers' compensation benefits would be protected, which the court takes to include a suggestion that the employee would only be protected from adverse actions by the employee's *present* employer. Wordekemper contends that the evidence of Loneman's comments about the supposed illegitimacy of his workers' compensation claim demonstrates a discriminatory animus towards him for filing a workers' compensation claim, and that a decision not to hire him that resulted from such an animus should be barred by the same public policy that protects an employee from termination for seeking workers' compensation benefits from a current employer.

In their reply brief, the defendants do not challenge Wordekemper's contentions that a "retaliatory failure to hire" cause of action is authorized by the same public policy that authorizes à cause of action for retaliatory termination for seeking workers' compensation benefits, apparently standing on their argument that even if such a cause of action is authorized by Iowa common law, Wordekemper cannot generate genuine issues of material fact on such a claim.

### 2. Analysis

The Iowa Court of Appeals has summarized Iowa law regarding retaliation for seeking workers' compensation benefits as follows:

> In Iowa, discharge based on retaliation for seeking workers' compensation benefits is against public policy. *Springer v. Weeks & Leo Co.*, 429 N.W.2d 558, 560 (Iowa 1988); *see also Smith v. Smithway Motor Xpress, Inc.*, 464 N.W.2d 682, 686 (Iowa 1990); *Graves v. O'Hara*, 576 N.W.2d 625, 628 (Iowa App.1998). In order to recover, [the plaintiff] must prove [his] protected conduct of seeking workers' compensation benefits was a determining factor in [the defendant's] decision to terminate [his] employment. *See Smith*, 464 N.W.2d at 686. A determining factor is one that tips the scales decisively in either direction. *Id.* Proof adverse employment action occurs after protected employee conduct, without more, is insufficient to generate a fact question on the determining factor issue. *Phipps v. IASD Health Servs. Corp.*, 558 N.W.2d 198, 203 (Iowa 1997) (citing *Hulme v. Barrett*, 480 N.W.2d 40, 43 (Iowa 1992)).

*Weinzetl v. Ruan Single Source Transp. Co.*, 587 N.W.2d 809, 811 (Iowa Ct.App. 1998). The court concludes that the disposition of the defendants' motion for summary judgment on Wordekemper's common-law "workers' compensation retaliation" claim, like the disposition of the motion as to his disability discrimination claim, depends upon which defendants are seeking summary judgment on the claim. Again, the distinction to be drawn is between WIHE and Handlos, on the one hand, and Midwest Homes and Malloy, on the other.

### a. WIHE and Handlos

■ The court agrees with the defendants that Wordekemper cannot generate a genuine issue of material fact that "[his] protected conduct of seeking workers' compensation benefits was a determining factor in [WIHE's] decision to terminate [his] employment." *Id.* Indeed, it does not appear to the court that he has attempted to do so, in light of the undisputed evidence that the reason WIHE terminated *all* of its employees was that it was forced to close by its primary creditor. Therefore, these defendants are entitled to summary judgment on Wordekemper's common-law claim.

### b. Midwest Homes and Malloy [5]

■ The issue requires a different disposition as to defendants Midwest Homes and Malloy, however. The court concluded, above, that Wordekemper had either not attempted or had failed to generate genuine issues of material fact that Midwest Homes was a reincarnation of his prior employer, even if he had attempted to generate genuine issues of material fact that Midwest Homes was, however briefly, his employer just prior to his termination. The court recognizes that Iowa has never recognized a cause of action for retaliatory failure to hire or rehire a prospective employee based on that employee's past workers' compensation claims or attempts to seek such benefits. *See, e.g., Mcmahon v. Mid–America Constr. Co. Of Ia.*, 2000 WL 1587952 (Iowa Ct.App.2000) (unpublished decision) (noting that "Iowa has not recognized a cause of action for wrongful failure to rehire an employee in retaliation for seeking workers' compensation benefits," in a case in which the plaintiff had taken a voluntary layoff, then contended

---

**5.** Again, the defendants have not put at issue the question of whether Patrick Malloy can be held individually liable on this claim. There-fore, the court will not pass on that issue, and will not distinguish between the bases for liability of Midwest Homes and Malloy.

that his employer refused to rehire him based on his prior workers' compensation claim, and holding that, even if such an action was recognized, the plaintiff could not prevail on such a claim, because he could not show that his prior workers' compensation claims were a determining factor in the employment decision). The court also recognizes that other jurisdictions are split on the recognition of such a claim. *Compare* Massachusetts Workers' Compensation Act, MASS. GEN. LAWS CH. 152, § 75B(2) (providing that "no employer ... shall discharge, refuse to hire, or in any other manner discriminate against an employee because the employee has exercised a right afforded by [the Workers' Compensation Act]"), *with Warnek v. ABB Combustion Engineering Services, Inc.*, 137 Wash.2d 450, 455–59, 972 P.2d 453, 455–57 (Wash.1999) (answering in the negative the following certified question from a federal court: "Do either of the causes of action described by Wash. Rev.Code § 51.48.025 and *Wilmot v. Kaiser Alum. & Chem. Corp.*, 118 Wash.2d 46, 821 P.2d 18 encompass a former employee who is not rehired because the former employee filed a workers' compensation grievance during the course of previous employment with the employer?", and suggesting that a different subsequent employer also would not be subject to such a claim). The court is also aware that the Iowa Supreme Court has warned against broad application of the public policy exception, cautioning that courts must proceed cautiously when asked to declare public policy to support an exception to the at-will employment doctrine and only to utilize those policies that are well-recognized and clearly defined. *See Fitzgerald v. Salsbury Chem., Inc.*, 613 N.W.2d 275, 283 (Iowa 2000). However, the court need not address whether Iowa would recognize the sort of "retaliation" claim Wordekemper attempts to assert here, based on the policies protecting workers' compensation claimants, because the defendants have never asked the court to do so, instead relying on their contention that *if* such a claim would otherwise apply to the circumstances of this case, Wordekemper cannot prevail on such a claim, because his workers' compensation claim was not a "determining factor" in Midwest Homes' decision not to hire him.[6]

On the limited ground asserted by Midwest Homes and Malloy, the court concludes that their motion for summary judgment on Wordekemper's common-law claim must fail. Instead, based upon the evidence upon which Wordekemper relies, there *are* genuine issues of material fact that his "protected conduct of seeking workers' compensation benefits was a determining factor in [Midwest Homes'] decision [not to hire him]." *Weinzetl*, 587 N.W.2d at 811. That evidence, first and foremost, is again the comments attributed to Mr. Loneman suggesting doubt about the legitimacy of Wordekemper's workers' compensation claim against WIHE and Mr. Loneman's role in Midwest Homes' hiring decisions. Moreover, the defendants' contention that the prior injury or claims histories of employees were irrelevant to the workers' compensation insurance premiums that a new company like Midwest Homes would have to pay does not preclude the possibility that *other* concerns of the prospective employer, like the costs of lost productivity, might motivate a prospective employer to make an employment decision based on a prospective employee's prior injury or workers' compensation claims history. Similarly, their evidence that Midwest

---

**6.** This case might well present optimal circumstances for presentation of the question of whether Iowa recognizes such a cause of action, by way of certified questions to the Iowa Supreme Court. However, the court will not pursue that course *sua sponte,* at least not at this juncture.

Homes actually hired other persons with prior injuries or workers' compensation claims does no more than show that there is a dispute of fact from contrary inferences.

Therefore, defendants Midwest Homes and Malloy *are not* entitled to summary judgment on Wordekemper's common-law claim.

## III. CONCLUSION

Upon the foregoing, the defendants' January 13, 2003, motion for summary judgment on all of Wordekemper's claims (docket no. 16) is **granted in part and denied in part**. More specifically,

1. Summary judgment is **granted** in favor of defendants WIHE and Handlos on all claims against them;

2. Summary judgment is **denied** as to defendants Midwest Homes and Malloy on the claims against them.

a. Plaintiff's disability discrimination claims under state and federal law shall proceed to trial only on a theory of "perceived disability" discrimination.

b. Plaintiff's common-law claim shall also proceed to trial against these defendants on a theory of retaliatory failure to hire because of prior workers' compensation claims with a previous employer.

IT IS FURTHER ORDERED THAT plaintiff's application to file a surreply is **granted**.

**IT IS SO ORDERED**.