**Ann LECLAIR, Plaintiff,**

v.

**WELLS FARGO BANK IOWA, N.A., Defendant,**

**No. CIV.4:02–CV–10051.**

United States District Court, S.D. Iowa, Central Division.

July 9, 2003.

Darrell G. Meyer, Marshalltown, IA, for Plaintiff.

Deborah M. Tharnish, Jo Ellen Whitney, Davis, Brown, Koehn, Shors & Roberts PC, Des Moines, IA, for Defendant.

## ORDER

LONGSTAFF, Chief Judge.

The Court has before it defendant Wells Fargo Bank Iowa, N.A.'s ("Wells Fargo") motion for summary judgment, filed May 1, 2003. Plaintiff resisted the motion June 5, 2003, and defendant filed a reply memorandum on June 19, 2003. The motion is now considered fully submitted.

## I. BACKGROUND

The following relevant facts either are not in dispute or are viewed in a light most favorable to plaintiff. Plaintiff Ann LeClair has a history of dysthymia and major depression dating back prior to 1993. Medical records indicate plaintiff has been hospitalized more than ten times for mental health conditions, including attempted suicide and substance abuse. On September 7, 1993, plaintiff was declared "seriously mentally impaired" by an associate judge of the Iowa District Court for Marshall County, and ordered committed for impatient counseling and treatment at the University of Iowa Hospitals and Clinics. In March 1994, the Social Security Administration determined that plaintiff was disabled under the meaning of the Social Security Act on the basis of a mental health condition, specifically dysthymia with major depression. Beginning in August 1997, plaintiff enrolled in and subsequently completed a rehabilitation program for training at Marshalltown Community College.

Plaintiff began working for the predecessor of defendant Well Fargo [hereinafter "Wells Fargo"] on or about May 17, 1998. Plaintiff initially worked in Clive, Iowa, but then transferred to the banking store in Ames, Iowa.

On several occasions during 1999 and early 2000, plaintiff was nominated for service excellence awards by her supervisors at Wells Fargo. She won the award in the summer of 2000. Several Wells Fargo employees also wrote personal thank-you notes praising plaintiff for exceptional customer service.

During the same time period, however, plaintiff also received warnings for cash security violations in 1999. These warnings included a verbal warning on June 25, 1999, and a written warning on August 31, 1999.

On September 11, 1999, plaintiff and all other Ames branch tellers were given a written warning reiterating the importance of following standard operating procedures ("SOPs"). In addition, tellers were regularly reminded of the importance of complying with bank standards and procedures, the need for careful balancing and avoiding over/short situations and ticket errors, and the need to reduce errors. The requirement of processing all transactions according to SOPs is an important part of the annual performance evaluation, which considers each teller's errors and offsets.

In August 2000, plaintiff began to experience a relapse of her previous depression, and informed her supervisor of the problem at least once prior to mid-September 2000. Plaintiff contends in her administrative complaint that she began to receive increased pressure from her supervisor shortly thereafter, and that co-workers did not receive the same pressure. Plaintiff's annual employee evaluation for the period between August 1999 and August 2000 was largely positive, although her error and offset rate was deemed "not acceptable."

On September 7, 2000, plaintiff received a written warning for failing to follow SOPs with respect to a commercial deposit. Plaintiff contacted defendant's employee assistance program after receiving this

warning, but was not helped by the program. On October 2, 2000, plaintiff was placed on a final written warning for unsatisfactory work performance.

The final written warning given to plaintiff stated that her performance was unsatisfactory in the following areas: consistently complying with Wells Fargo standards and procedures, projecting a professional manner at all times, maintaining error tolerance levels and maintaining over/short tolerance levels. In a meeting held to discuss the warning, Wells Fargo supervisors told plaintiff that she was expected to bring her performance to a satisfactory level, beginning immediately, and that she would be terminated if she made any additional errors. Plaintiff started crying, and was told to put her arms down and to stop crying. She also was told to take a few paid days off, and that she should "be better" when she returned to work.

Either during the same meeting, or upon her return to work three days later, Wells Fargo supervisors told plaintiff that her teller position was being eliminated, and that she could choose between a receptionist position or a 30–hour–per week teller position, which was a decrease from the 40–hour position she previously held. She chose the latter position.

Between September 2000 and December 2000, plaintiff was excused from work on a few occasions under doctor's orders, and was on prescription medication for her mental health. Plaintiff contends that she was repeatedly reprimanded during this period for not smiling, and criticized for not socializing after work with co-workers.

Plaintiff contends that in October 2000, she was treated differently from co-workers who did not have mental health problems, by being the sole teller required to stay late to reconcile drawer balances, when others who had made similar errors were not forced to stay late. Plaintiff also contends that other workers were allowed to read or study on duty, while plaintiff was prohibited from both activities. Plaintiff states her supervisor continually changed plaintiff's work schedule to make things more difficult for plaintiff.

Meanwhile, on October 23, 2000, plaintiff left a roll of quarters in the cash drawer, in violation of Wells Fargo procedures. On November 20, 2000, she shorted a commercial customer by $150, and placed a $20 bill in the $50 strap.

During the Christmas holiday season, the bank was short-staffed. Plaintiff was placed in charge of the vault, despite telling her supervisor she could not manage the pressure. Plaintiff's supervisor told plaintiff she had no choice.

On December 29, 2000, a strap of money in the vault was short by $200, and a $180.74 error was found on a commercial deposit. Plaintiff was terminated on January 3, 2001.

Plaintiff subsequently filed a timely administrative charge of discrimination with the Iowa Civil Rights Commission ("ICRC"). The complaint was cross-filed with the Equal Employment Opportunity Commission ("EEOC"). The ICRC issued an Administrative Release, or Letter of Right–To–Sue, on September 14, 2001. The EEOC in turn issued its Notice of Right to Sue on October 30, 2001.

On January 28, 2002, plaintiff presented to this Court her complaint, as well as an affidavit and request to proceed in Forma Pauperis, and directions for service by a United States Marshal.[1] On February 6,

---

1. Although the copies of the affidavit and complaint contained in plaintiff's appendix are not dated, the central file for this matter contains a copy of the affidavit and a civil cover sheet, both of which are dated January 28, 2002. According to policy, the deputy clerk would have separated the complaint

2002, this Court issued an Order deferring ruling on plaintiff's request to proceed in Forma Pauperis, and granted plaintiff fifteen (15) days in which to submit addition information regarding her financial condition. This Court ultimately granted plaintiff's application on February 27, 2002, and the complaint was filed of record the same day.

Plaintiff alleges in her complaint that defendant discriminated against her based on her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Iowa Civil Rights Act ("ICRA"), IOWA CODE §§ 216 et seq., respectively. Defendant now moves for summary judgment on both claims.

## II. APPLICABLE LAW AND DISCUSSION

### A. Summary Judgment Standard

Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Walsh v. United States*, 31 F.3d 696, 698 (8th Cir.1994). "When the evidence would support conflicting conclusions, summary judgment should be denied." *Kells v. Sinclair Buick–GMC Truck, Inc.*, 210 F.3d 827, 830 (8th Cir. 2000). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine," if the evidence is suffi-

cient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

"Summary judgment should seldom be used in employment discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994). Summary judgment should be granted only on the rare occasion where no dispute of fact exists and there is only one conclusion. *Id.* (citations omitted) (quotations omitted). The Court should not grant defendants' summary judgment motion "unless the evidence could not support any reasonable inference for the nonmovant." *Id.* (citations omitted).

### B. Whether Plaintiff's Claims Are Time–Barred

#### 1. Plaintiff's ADA Claim

█ Before discussing the merits of plaintiff's claims, the Court must address defendant's contention that plaintiff's claims are untimely, due to the fact her complaint was not actually filed until February 27, 2002–outside the ninety-day window allowed under the applicable state and federal statutes. To comply with the limitations period under the ADA, a claimant generally must file a cause of action in district court within 90 days of receiving her "right-to-sue" letter from the EEOC. *See* 42 U.S.C. § 12117(a) (provision of ADA incorporating ninety-day time period set forth for Title VII claims in 42 U.S.C. § 2000e–5(a)). As set forth above, although plaintiff filed an affidavit and request to proceed in Forma Pauperis on

---

from the affidavit and civil cover sheet until the Court ruled on the motion to proceed in forma pauperis. In short, there is no reason to doubt, and defendant does not dispute, that

a copy of the complaint was in fact submitted on January 28, 2002 along with the other two documents.

January 28, 2002–within the limitations period-the Court did not grant her request and allow the complaint to be filed until the ninety-day period had expired.

It is important to note, however, that the ninety-day limitations period under 42 U.S.C. § 2000e–5(f)(1) is not jurisdictional, and therefore is subject to equitable tolling. *Hill v. John Chezik Imports*, 869 F.2d 1122, 1123 (8th Cir.1989). In *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984), the United States Supreme Court suggested that equitable tolling might be appropriate under the following circumstances: 1) when a claimant received inadequate notice of the right-to-sue; 2) when a motion for appointment of counsel is pending "and equity would justify tolling the statutory period until the motion is acted upon"; 3) when the court has caused the claimant to believe he has complied with all statutory prerequisites; or 4) when affirmative conduct on the part of defendant has "lulled the plaintiff into inaction."

Admittedly, the *Baldwin* Court found the facts before it did not satisfy any of the above criteria, and refused to apply the doctrine of equitable tolling. *Id.* For the reasons discussed below, however, this Court finds the *Baldwin* case clearly distinguishable from the facts at bar.

In *Baldwin*, the claimant attempted to commence her litigation by mailing her EEOC right-to-sue letter directly to the federal district court, along with a request for court-appointed counsel. *Id.* at 148, 104 S.Ct. 1723. Approximately one month after the plaintiff had mailed her letter and request for counsel, a United States magistrate judge entered an order requiring the plaintiff to move for counsel on the appropriate court-issued form and questionnaire. *Id.* The magistrate judge's order reminded plaintiff that she must file a complaint within the ninety-day period

specified in her right-to-sue letter. *Id.* Despite this reminder, the plaintiff did not return her questionnaire until the ninety-sixth day after she received her right-to-sue letter. *Id.* Subsequently, on the 130th day after receipt of the letter, she filed an "amended complaint." *Id.* The district court dismissed the complaint as untimely, and the Eleventh Circuit Court of Appeals reversed. *Id.* at 148–49, 104 S.Ct. 1723. The United States Supreme Court granted the employer's petition for writ of certiorari, and reversed the circuit court. As held by the Supreme Court: "Rule 3 of the Federal Rules of Civil Procedure states that '[a] civil action is commenced by filing a complaint with the court.' A complaint must contain, *inter alia*, 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Fed.R.Civ.P. 8(a)(2)." *Id.* at 149, 104 S.Ct. 1723. The *Baldwin* Court also found it significant that plaintiff was reminded of the ninety-day limitations period upon mailing her right-to-sue letter to the district court, and again in the magistrate judge's order requiring her to complete the questionnaire. *Id.* at 151, 104 S.Ct. 1723.

Unlike the situation in *Baldwin*, the present plaintiff submitted to the Court her actual complaint within the applicable limitations period. She thus appears to have satisfied the requirements for commencement of a civil action set forth in Rules 3 and 8 of the Federal Rules of Civil Procedure. *See id.* at 149, 104 S.Ct. 1723 (finding plaintiff's submission of right-to-sue letter did not comply with requirement of submitting short and plain statement).

Furthermore, in its February 6, 2002 Order, this Court gave plaintiff a specific number of days in which to return her additional information, which plaintiff and her counsel reasonably could have interpreted as an extension of time in which to file her complaint. Unlike the magistrate

judge's order in *Baldwin,* this Court's Order did not remind plaintiff of the ninety-day deadline.

Accordingly, although not argued by plaintiff in her resistance memorandum, plaintiff has outlined facts in her statement of facts precluding summary judgment that cause this Court to find the doctrine of equitable tolling applicable to the case at bar. This Court's February 6, 2002 Order deferring ruling on plaintiff's request to proceed in Forma Pauperis satisfies the third *Baldwin* criterion, suggesting that equitable tolling will apply when court action leads "the plaintiff to believe that she has done everything required of her." *Id.* at 151, 104 S.Ct. 1723. Plaintiff's ADA claim is deemed timely filed.

### 2. Plaintiff's ICRA Claim

■ Defendant also urges the Court to dismiss plaintiff's state law claim on statute of limitations grounds. The undisputed facts show the ICRA issued its right-to-sue letter on September 14, 2001.

In order to file a timely claim under the ICRA, plaintiff would have had to have filed her complaint within ninety-days thereafter, on or before December 13, 2001. *See* Iowa Code § 216.16 ("An action authorized under this section is banned unless commenced within ninety days after issuance by the Commissioner [of the right to sue letter]."). The undisputed facts show plaintiff's complaint was not submitted to the Court, let alone filed, until well after the ninety-day period had expired. Accordingly, plaintiff's ICRA claim must be dismissed as untimely.

### C. Whether Plaintiff can Establish her Prima Facie Case under the ADA.

Courts traditionally have analyzed federal disability claims under one of two burden-shifting frameworks. Under the approach articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–805,

93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a plaintiff with circumstantial evidence was first required to establish a prima facie case of discrimination, after which the burden would shift to the defendant employer to articulate a legitimate, non-discriminatory reason for the decision. The burden would then shift back to the plaintiff to prove the defendant's articulated reason was a pretext for its true, discriminatory motive. *See Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1134–35 (8th Cir.1999) (citing *McDonnell Douglas,* 411 U.S. at 802–05, 93 S.Ct. 1817).

If a plaintiff was proceeding under a mixed-motive analysis, with direct evidence of discriminatory motive, the court followed the framework set forth in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *see also Kiel,* 169 F.3d at 1136 ("We have interpreted [*Price Waterhouse* analysis] to require a plaintiff to present, at a minimum, some direct evidence of discriminatory motive."). Under *Price Waterhouse,* rather than simply articulating a legitimate, nondiscriminatory reason for the employment decision, the defendant needed to show by a preponderance of the evidence that it would have made the same decision regardless of the plaintiff's protected status. *Price Waterhouse,* 490 U.S. at 258, 109 S.Ct. 1775. If the employer could not meet this burden, the employee would prevail on her claim. *Cronquist v. City of Minneapolis,* 237 F.3d 920, 924 (8th Cir.2001).

This dichotomy was recently called into question by the Supreme Court's decision in *Desert Palace v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84 (2003), which interpreted the 1991 amendments to Title VII. In *Desert Palace,* the Supreme Court unanimously held that a "heightened showing" in the form of direct evidence is *not* required to proceed under the mixed-mo-

tive analysis set forth in 42 U.S.C. § 2000e–2(m) and § 2000e–5(g)(2)(B). *Desert Palace,* 539 U.S. 90, 123 S.Ct. 2148, 2153 (2003). *See also Costa v. Desert Palace, Inc.,* 299 F.3d 838, 855 *affirmed by Desert Palace v. Costa,* 539 U.S. 90, 123 S.Ct. 2148, 156 L.Ed.2d 84, 2003 WL 21310219 (2003). ("[N]othing compels the parties to invoke the *McDonnell Douglas* presumption. Evidence can be in the form of the *McDonnell Douglas* prima facie case, or other sufficient evidence-direct or circumstantial-of discriminatory intent.").

██ In *Skomsky v. Speedway SuperAmerica, L.L.C.,* 267 F.Supp.2d 995 (D.Minn.2003), a federal district court recently extended *Desert Palace* to discrimination cases brought under the ADA. *Skomsky,* 267 F.Supp.2d at 1000 ("Federal anti-discrimination laws such as the ADA are patterned after Title VII, and as such should be evaluated similarly[;][t]he interests of uniformity require the Court to extend the burden-shifting paradigm articulated in 42 U.S.C. § 2000e–2(m) and § 2000e–5(g)(2)(B) to ADA disparate treatment claims."). This Court agrees with the well-reasoned opinion in *Skomsky,* thereby declining to follow the *McDonnell Douglas* burden-shifting framework. Because plaintiff has argued that multiple motives-both legitimate and illegitimate-entered into the adverse employment decision, the Court finds that plaintiff's case is appropriately analyzed pursuant to 42 U.S.C. §§ 2000e–2(m) and 2000e–5(g)(2)(B). Under this framework, a plaintiff must show simply that her alleged

disability "was a motivating factor for any employment practice." 42 U.S.C. § 2000e–2(m). The defendant may then prove its affirmative defense and avoid paying damages if it proves it "would have taken the same action in the absence of the impermissible motivating factor." 42 U.S.C. § 2000e–5(g)(2)(B).[2]

**1. Whether Plaintiff is Statutorily Disabled**

██ In order to reach the analysis dictated by 42 U.S.C. §§ 2000e–2(m) and 2000e–5(g)(2)(B), however, plaintiff must first establish she is *disabled* under the meaning of the Act. 42 U.S.C. § 12102(2).[3] In the present case, defendant contends plaintiff is unable to satisfy the first element, that she is disabled under the ADA.

Disability is defined in relevant part under the ADA as:

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [or]

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2). In the present case, plaintiff attempts to establish disability through the first and second prongs of § 12102(2). *See* Plaintiff's Brief in Support of Resistance to Motion for Summary Judgment at 6.

**a. Actual disability**

With regard to the disabling nature of plaintiff's mental illness, the Court notes

---

**2.** Other relief, including injunctive relief, attorney's fees and costs, may be available, however. *See* 42 U.S.C. § 2000e–5(g)(2)(B)(1).

**3.** Plaintiff must also establish she is qualified to perform the essential functions of her position with or without accommodation, and that she suffered an adverse employment ac-

tion under circumstances giving rise to an inference of unlawful discrimination. *Kellogg v. Union Pacific Railroad Co.,* 233 F.3d 1083, 1086 (8th Cir.2000) (outlining prima facie case necessary for disparate impact disability discrimination). As discussed below, however, because plaintiff has failed to establish that she is disabled under the Act, the Court need not address these remaining issues.

that: "Merely having an impairment does not make one disabled for purposes of the ADA. [A claimant] also need[s] to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg., Kentucky, Inc., v. Williams*, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); *Weber v. Strippit, Inc.*, 186 F.3d 907, 913–14 (8th Cir.1999); *Wooten v. Farmland Foods*, 58 F.3d 382, 385–86 (8th Cir.1995). "Major life activity" is defined in the applicable regulations to include: "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i). The use of the phrase "such as" indicates that the EEOC did not intend for the list to be exclusive, but rather, illustrative of the types of activities which the EEOC would consider to be "major life activities." *Krauel v. Iowa Methodist Medical Center*, 915 F.Supp. 102, 106 (S.D.Iowa 1995).

Although defendant does not question that plaintiff has been diagnosed with mental illness and/or depression, it does dispute that, during the relevant time period, plaintiff's mental illness substantially limited one or more major life activities. As noted by defendant, even while suffering a "relapse" of depression in the fall of 2000, plaintiff testified in deposition that she remained "capable of performing [her] job duties as a teller," could take care of her personal needs, and generally, believed that her "life away from work [was] going forward in a normal fashion." Defendant's App. at 34. She also failed to identify a particular major life activity in which she was substantially limited.[4]

In resisting defendant's motion on this basis, plaintiff relies exclusively on her medical history from 1993–94, as well as the fact she was granted Social Security disability benefits in 1994. Plaintiff has not been hospitalized for mental illness since 1993–long before she began working for defendant–however. *See gen.* Plaintiff's App. at 15–21. The fact plaintiff's mental illness *might* have been disabling in the past, or again on some unknown future occasion is insufficient to establish disability under the ADA. *See, e.g., Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 724 (8th Cir.2002) (court rejects diabetic's claim that he *could* suffer a substantially limiting impairment if he failed to "properly monitor and treat his diabetes"). As held by the Supreme Court in *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 482, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999): "A disability exists only where an impairment substantially limits a major life activity, not where it *might, could,* or *would* be substantially limiting if mitigating measures were not taken." (emphasis added) (additional internal citations omitted). The Court therefore concludes plaintiff has failed to create a material issue of fact as to whether she was "disabled" under the meaning of the ADA during the time period relative to her termination.

### b. Record of Disability

■ Plaintiff also attempts to establish statutory disability by asserting she has a record of disability. *See* 42 U.S.C. § 12102(2)(B). "Having a record of a qualifying impairment means that an employee 'has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.'" *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 961 (8th

---

**4.** Even assuming plaintiff had asserted she was substantially limited in the major life activity of working, she has failed to create a material issue of fact as to whether she was "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(i) (2002).

Cir.2000) (quoting 29 C.F.R. § 1630.2(k)). As clarified in the Appendix, "The intent of this provision, in part, is to ensure that people are not discriminated against because of a history of disability.... This part of the definition is satisfied if *a record relied on by an employer* indicates that the individual has or has had a substantially limiting impairment." 29 C.F.R. pt. 1630, App. § 1630.2(k) (2002) (emphasis added); *see also Taylor,* 214 F.3d at 961 ("In order to have a record of a disability, *an employee's documentation* must show that she has a history of or has been subject to misclassification as disabled." ") (internal citation omitted) (emphasis added).

In the present case, there is no evidence plaintiff ever provided Wells Fargo with documentation suggesting she had a *substantially limiting impairment.* In her deposition, plaintiff indicated she attempted to explain gaps in her employment history by indicating she had been "ill off and on," she admits she did not identify her illness, or provide further detail. Defendant's App. at 27. Although plaintiff informed her supervisor in August 2000 that she was experiencing a recurrence of depression, *see* Plaintiff's App. at 59, the record is devoid of evidence Wells Fargo had reason to know or suspect plaintiff's depression substantially limited a major life activity. *See* 29 C.F.R. pt 1630, App. § 1630.2(k) (2002) ("The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's life activities."); *see also Hilburn v. Murata Electronics North America, Inc.,* 181 F.3d 1220, 1229 (11th Cir.1999) (finding summary judgment appropriate on plaintiff's claim she had a record of impairment based on fact plaintiff "had not furnished any evidence that [she] had a record of a mental or physical impairment which substantially limited one or more of her major life activities."). Similarly, the simple mention she was on medication, and/or physician's notes excusing her from work on a short-term basis, do not equal documentation of a "substantially limiting" impairment. *See Taylor,* 214 F.3d at 961 ("We do not believe that [the employer's] mere knowledge of Taylor's heart attack, coupled with the sending of a get-well card and a note about her job duties, constitutes sufficient documentation that Taylor had a history of disability or tat [the employer] misclassified her as disabled within the meaning of the ADA."). The Court therefore concludes plaintiff is unable to establish a material issue of fact as to whether, during the relevant time period, she had a record of disability under 42 U.S.C. § 12102(2)(B) and 29 C.F.R. § 1630.2(k).

2. Remaining Issues Regarding Plaintiff's ADA Claim

Because the Court finds plaintiff is unable to establish a material issue of fact as to whether she is disabled under the meaning of the ADA it need not address the remaining elements of plaintiff's prima facie case.

III. CONCLUSION

For the reasons outlined above, defendant's motion for summary judgment is granted in full. The Clerk of Court is directed to enter judgment in favor of defendant and against plaintiff.

IT IS SO ORDERED.